[Civ. No. 14649.  First Dist., Div. One.  Apr. 28, 1951.]

BOYD R. ALEXANDER et al., Respondents, v. PAUL H. HAMMARBERG, Appellant.

874

Oswald G. Ingold and Henry Poppic for Appellant.

Norman Elkington for Respondents.

PETERS, P. J.—The Alexanders, who are the plaintiffs and respondents, desired to build a house on a lot owned by them in Berkeley. Hammarberg, the defendant and appellant, who is an architect; was employed by the Alexanders to draw plans and specifications for the proposed house, and later employed to supervise its construction. Rahlves and Rahlves, building contractors, hereafter referred to as Rahlves, contracted with the Alexanders to construct the house according to the plans and specifications prepared by Hammarberg. Shortly after the Alexanders moved into the completed house they discovered that the floors were not level, the plaster cracked, and other defects appeared, all caused by a sinking and cracking of the foundations. It was then discovered that the front foundations had been placed on loosely filled dirt and not in the solid earth as called for by the plans and specifications. The Alexanders, although they had signed a notice of completion on the advice of Hammarberg, refused to make the final payment to Rahlves, who filed a mechanic's lien and a suit to foreclose. The Alexanders filed an answer denying liability, and a counterclaim and cross-complaint setting up a cause of action for negligence against Rahlves. The Alexanders also filed an independent suit against Rahlves and Hammarberg. This complaint set forth two causes of action against Rahlves, one in negligence and the other for rescission. It also set forth two causes of action against Hammarberg, one for negligence in the preparation of the plans and in supervising construction, and the second for rescission. The Alexanders moved to consolidate the foreclosure action with their action. This motion was granted.

When the consolidated actions were called for trial, Rahlves moved that the Alexanders be compelled to elect between their cause of action for negligence and their cause of action for rescission. This motion was also granted. The Alexanders elected to stand on their negligence counts, and dismissed the rescission counts against all parties. Hammarberg then moved for a severance of the cause of action against him from that stated against Rahlves. This motion was predicated on the theory that the liability of Rahlves and Hammarberg, as disclosed by the pleadings, was several and not joint, that the issues against both defendants were not the same, and that to try both actions together would be prejudicial to Hammarberg. This motion of Hammarberg for a severance was granted. The actions between Rahlves and the Alexanders were tried first. This trial resulted in a judgment that Rahlves were entitled to the balance due them under their construction contract, namely, $2,720, and the Alexanders were entitled to $2,027.45 as reimbursement for the cost of remedying defects caused by the negligence of Rahlves. Thus, the net result of this action was a judgment for Rahlves in the amount of $692.55.

Then the action involving only Hammarberg and the Alexanders was tried before a jury. That is the present case. The trial court instructed that, should the jury find for the Alexanders, they should first deduct the amount of the damages already allowed the Alexanders in the case against Rahlves. The jury brought in a verdict in the amount of $4,972.55, which, when added to the judgment in the Rahlves case, indicates that the jury fixed the total damage to the Alexanders at $7,000. Hammarberg had made motions for a nonsuit and directed verdict, which were denied, as was his motion for a judgment notwithstanding the verdict. Judgment was entered in accordance with the verdict, and Hammarberg appeals. He makes three main contentions:

1. That the trial court should have granted the three motions mentioned above because, so it is asserted, the evidence establishes that Rahlves and Hammarberg are joint or concurrent tort feasors; that for this reason the satisfaction of judgment filed in the Rahlves case constituted the release of a joint or concurrent tort feasor, which, as a matter of law, released Hammarberg;

2. That the three motions should have been granted because, so it is urged, the subject matter of this action is the same as

that involved in the Rahlves case, and the first adjudication estops the Alexanders from securing any recovery against Hammarberg; and

3. That the trial court erred in refusing to give, in modifying, and in giving certain instructions.

■ The pertinent facts are that in late July of 1947 the Alexanders hired Hammarberg to prepare plans and specifications for a house to be built on a hillside lot in Berkeley, and a contract was executed whereby the architect was to receive four per cent of the estimated cost of construction as his fee for this service. This contract did not include any agreement for supervising construction by Hammarberg, it being agreed that such service, if desired, would cost an additional 4 per cent. Hammarberg drafted the plans and specifications and was paid $490 for this service. Thereafter, the Alexanders entered into a building contract with Rahlves, building contractors, who agreed to construct the building according to the plans and specifications for $13,600. Construction started in the fall of 1947. Shortly thereafter the Alexanders consulted Hammarberg and asked him if he would take over supervision of the construction. They testified that he agreed to undertake supervision of the construction. Admittedly, they subsequently paid him, by a series of checks, a total of $441.10. Hammarberg testified that these payments were for advice and not for supervision. He admitted, however, that Mrs. Alexander had requested him to take over the supervision of construction, and that he had never talked with her or her husband about simply giving advice. Nevertheless, he insisted that he had not agreed to supervise. This conflict, if there be a conflict on the issue, has been resolved against him by the trial court. The evidence overwhelmingly supports the implied finding of the jury that Hammarberg contracted to supervise construction.

There is no doubt that Hammarberg did supervise to some extent. Within a day or two of this last agreement between the Alexanders and Hammarberg, Mr. Alexander reported to the architect that he had seen workmen putting in inadequate trenches, and placing foundation forms on loose earth fill. Hammarberg said "I can't believe it," but promised to straighten the matter out. A day or two later he informed Alexander that he had been out to the job, had seen one of the builders, and that everything had been fixed up. Hammarberg admitted that he had visited the property and had

then instructed one of the builders to place the foundations on solid ground, that the builder had agreed to do so, but that he made no further examination to ascertain if his instructions had been carried out. The plans and specifications called for the west or front foundations to be a minimum of 6 inches, and a maximum of 18 inches below the natural ground level. Hammarberg admitted that the west foundation was in fact constructed on loose earth from 18 to 20 inches above the natural ground level.

Hammarberg admitted that it is the custom for a supervising architect to check the foundations, and admitted that all that he did was to talk about it to the men on the job. He testified that he had "told the men to go ahead and pour when the foundations were, in fact, 18 inches above ground level, natural ground level" and answered "That is right" to the question "if you had not told the concrete men to pour concrete in forms, the bottoms of which were 18 inches above the natural ground level, this thing would not have taken place, would it?"

After the house was completed Hammarberg presented to Alexander, and advised him to sign, a notice of completion. This was signed by Alexander. The Alexanders moved into the house on March 24, 1948, and shortly thereafter noticed that rugs and furniture had a tendency to slide toward the front of the house. An inspection disclosed sloping floors and cracks in the plaster, which condition continued to get worse, and shortly thereafter big cracks were found in the front foundations. Hammarberg admitted that the front foundations settled at least two inches. Crabtree, acting chief of the appraisal division and former chief of the architectural section of the Veterans Administration, testified that he first inspected the house in April or May, 1948, and found the living room floor in excess of two inches off level, found the ceilings off level, and small cracks in the plaster. He inspected the premises three times, the last time a week before this trial, and discovered that the cracks had increased in number and size after each inspection. When he first inspected the foundations there was a crack in the west wall. On his second inspection this crack had increased in size and others were present. By the time of his third inspection cracks had appeared in the center and end foundations, and the fireplace had settled. He testified that it would be necessary to rebuild virtually the entire house to put it in the

condition contemplated by the plans and specifications. He approved a plan of repair submitted by an engineer by the name of Engle, and testified that the repairs proposed by Engle would cost between $12,500 and $13,000, plus certain supervisory costs. There were many other estimates made by various experts. Their estimates vary greatly running from $1,846.50 to $17,354. No point is made on this appeal challenging the amount of damages fixed by the jury. Alexander testified that he could not make the repairs because he did not have the money to pay for them.

The experts, while agreeing that the house had settled, disagreed as to whether the settling of the foundations occurred after the house was complete, before it was plastered, or both. They also disagreed, substantially, as to what had to be done to make the house conform to the plans and specifications.

Alexander, on cross-examination, testified that in the Rahlves case he had testified as to the damages as they existed at that time, and that his testimony on the present trial was as to the damages as they now exist. He conceded that the damages as they existed at the times of the Rahlves and the present trials were fundamentally the same, but that the cracks increased in size and number between the two trials.

■ The first point urged by appellant is that the builders and the architect, under the evidence, were joint or concurrent tort feasors, and that, since the judgment in the Rahlves case has been satisfied, the release of the Rahlves judgment automatically released Hammarberg. As already pointed out, when Rahlves and Hammarberg were joined in the same complaint, Hammarberg successfully requested and secured a severance. At that time he urged that, under the pleadings, Rahlves and Hammarberg were not jointly affected; that the cause of action against Rahlves was "for damages as a result of alleged improper performance of a builder's contract, whereas, Alexander and Hammarberg are now parties to an action which, in its nature, appears more like a malpractice suit for negligence on the part of an architect"; that in the Alexander-Rahlves causes of action the issues were, "Was the contract substantially performed? In what respects was there a failure to perform? What damage was suffered by such failure?"; while in the Alexander-Hammarberg cause of action the question revolved around the sufficiency of the plans and specifications, "the extent, if any, of supervisory respon-

sibility, and the competence of the architect.'' For these reasons a severance was demanded and secured. Now, after securing the severance, and after a trial in which the evidence demonstrated that the issues were substantially as he outlined them in his motion for a severance, he contends that the parties were joint or concurrent tort feasors. These two positions are entirely inconsistent. The courts will not recognize or tolerate such tactics. A party cannot thus ''blow hot and cold.'' (*McDanels* v. *General Ins. Co.*, 1 Cal.App.2d 454, 459 [35 P.2d 394, 36 P.2d 829]; *Chaquette* v. *Ortet*, 60 Cal. 594, 600.) The courts would be impotent indeed if they were compelled to approve such duplicity. Under elementary principles, even if the point were sound, which it is not, Hammarberg has waived or is estopped from successfully urging it.

Even if a waiver did not exist or if Hammarberg were not estopped, the point now under consideration is without merit. To constitute the parties joint tort feasors, the following three elements must all exist: ''(1) A concert of action; (2) A unity of purpose or design; (3) Two or more defendants working separately but to a common purpose and each acting with the knowledge and consent of the others.'' (*The Weinberg Co.* v. *Bixby*, 185 Cal. 87, 106 [196 P. 25].) In *Slater* v. *Pacific American Oil Co.*, 212 Cal. 648 [300 P. 31], the court held that the mere fact that consequences of different torts unite where there was no concert or unity of design among the defendants, does not create joint liability. The court at page 651 quoted the following, with approval, from *Miller* v. *Highland Ditch Co.*, 87 Cal. 430, 431 [25 P. 550, 22 Am.St.Rep. 254] : ''It is clear that the rule as established by the general authorities is, that an action at law for damages cannot be maintained against several defendants jointly, when each acted independently of the others, and there was no concert or unity of design between them. It is held that in such case the tort of each defendant was several when committed, and that it does not become joint because afterwards its consequences united with the consequences of several other torts committed by other persons.'' (See, also, *Key* v. *Caldwell*, 39 Cal.App.2d 698 [104 P.2d 87].) In the instant case the pleadings and evidence demonstrate that there was no unity of purpose between Rahlves and Hammarberg, and that there was no concert of action between them. Hammarberg had no contractual relationship with Rahlves. He was the agent of the Alexanders. It was his duty to draft the

plans and specifications and to supervise construction. It was the duty of Rahlves to build in accordance with the plans and specifications. The Rahlves are charged with the violation of one duty, Hammarberg with the violation of a separate and distinct duty. The builders and the architect were not joint tort feasors.

Moreover, the judgment in the Rahlves case and in this one do not duplicate each other. In the Rahlves case the judgment covered only part of the damages suffered by the Alexanders. In that case the court found that Hammarberg was the agent of the Alexanders; that the builders were entitled to rely upon Hammarberg's instructions, and, where they did so, it constituted a waiver by the Alexanders of any failure to follow the plans and specifications in this respect; that the depth of the front foundation trench was approved by Hammarberg; that such approval constituted a waiver by the Alexanders of any defect existing therein. The court then found the damages for "that portion of the said defects for which . . . [Rahlves] were and are responsible and which were not waived by . . . [Alexanders] by and through their architect was and is the sum of $2,027.45." Thus, it is clear that the court found that the Alexanders suffered damage beyond that found in the Rahlves case, which damages, so far as Rahlves are concerned, was found to have been waived.

In the instant case the court was equally careful to separate the two liabilities. It instructed that if the jury found the total damage to the Alexanders exceeded $2,027.45, the amount awarded in the Rahlves case, they should deduct that sum from the total damage. It is clear that double compensation was prevented. This demonstrates that the present case does not fall within the rationale of the rule that the release of one joint tort feasor releases all. ■ The theory behind that rule is that if this were not the rule the injured party would recover double compensation. (*Dougherty* v. *California Kettleman Oil R., Inc.,* 13 Cal.2d 174 [88 P.2d 690].) Where, as here, it is clear that no double compensation has been awarded, the rule does not apply. Thus, in *Wallner* v. *Barry,* 207 Cal. 465, 473 [279 P. 148], the court, after first deciding that certain possible defendants were not joint tort feasors, stated: "Even if it were to be conceded that the city of Los Angeles was a joint tort-feasor with these appellants and that the same liability rested upon it as such for her injuries, it is a well-settled rule that before one tort-feasor can be held to

be discharged from liability through the release of another, the consideration for such release must have been accepted by the plaintiff in full satisfaction of the injury. [Citing authorities.]''

Another case announcing the same principle is *Ash* v. *Mortensen,* 24 Cal.2d 654 [150 P.2d 876]. There the plaintiff was injured in an automobile accident, which injuries were aggravated by negligent medical care—a legal situation somewhat analogous to the one here involved. Plaintiff sued the negligent motorist and got a $15,000 judgment which she settled for $5,753.22. The judgment was satisfied of record, and plaintiff signed a document releasing the motorist from all liabiilty. Then plaintiff sued the doctors for malpractice. The doctors set up the defense of the prior judgment, the satisfaction entered of record and the release, and urged that by reason of these factors they were released. The lower court so decided. The Supreme Court, in reversing, held that the motorist and the doctors were independent wrongdoers. The court stated (p. 658): ''A release of a cause of action against a wrongdoer is not a release of a separate or distinct cause of action against another independent wrongdoer. It follows that the mere release of Wubben [the motorist] from liability did not result in the discharge of the cause of action against defendants [the doctors]. We are of the opinion that a release of the original wrongdoer should release an attending doctor from liability for aggravation of the injury 'if there has been full compensation for both injuries, but not otherwise.' [Citing authorities.]''

The court then pointed out that, although the plaintiff had attempted to secure full recovery in the first action, she had settled the $15,000 judgment for something over $5,000. The court stated (p. 659):

''It has been held in some cases involving unliquidated tort demands that the payment of any sum in consideration of the release of one of several joint or independent concurrent tort feasors will be presumed to have been made and accepted as full compensation or satisfaction for the alleged injury. [Citing authorities.] There is authority to the contrary. [Citing a Federal case.] But whatever may be the rule with regard to a settlement with joint or independent tort feasors whose acts concur to produce a single injury, it does not follow that such presumption should be indulged where, as here, the injured person's claim embraces separate injuries

caused by independent successive tort feasors and is liquidated by a judgment against the original tort feasor. The presumption of full compensation or satisfaction found in the cited cases must be based on the fact that there is but a single indivisible injury and that the claim arising therefrom is unliquidated. Under the circumstances of this case, it would be more logical to presume that part payment of the Wubben [motorist] judgment represented merely the best obtainable compromise for the liability of the judgment debtor. [Citing a case.]

"We do not wish to be understood as holding that in every case of this kind the question of double recovery is to be determined solely by reference to the amount awarded in the first action. The jury's award in the action against Wubben is not binding on defendants or res judicata as to them. They have the right to show what damage, if any, was actually suffered by reason of malpractice and to have the jury's award in this action restricted to the difference between such damage and any sum already received by plaintiff as compensation therefor." This is exactly what was done in the present case.

Appellant next contends that the judgment in the Rahlves case is res judicata in this action, and that the Alexanders are estopped by that judgment from recovery here. Hammarberg urges that, although he was not a party to the Rahlves judgment, he may urge res judicata as against the other party to that action. Reliance, in this connection, is had on the rules announced in *Bernhard* v. *Bank of America,* 19 Cal.2d 807 [122 P.2d 892], and *Loughran* v. *Reynolds,* 70 Cal.App. 2d 241 [160 P.2d 904]. ■ It is undoubtedly true that in a proper case a person not a party to a prior action may urge that the prior judgment is res judicata. There is no absolute requirement of mutuality. ■ But for this rule to apply, the following conditions must exist: "In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" (*Bernhard* v. *Bank of America,* 19 Cal.2d 807, 813 [122 P.2d 892].)

■ The issues in the present case, as already pointed out, are not identical with those in the Rahlves case. The Rahlves

case was for damages for breach of a builder's contract, while the instant case is for negligence of the architect in supervising the work. The two courts kept these issues clearly separate and distinct. For these reasons, the rule of the Bernhard case is not here applicable.

■ Appellant makes certain arguments in connection with the instructions. The appellant proffered and the court refused to give an instruction to the effect that Hammarberg was not a party to the contract between Rahlves and the Alexanders, and that the builders were not bound to comply with the instructions or requests made by appellant. The instruction was properly refused. An architect is the agent of the owner, empowered to supervise and instruct the builders, and to see to it that they comply with their contract.

■ The court also refused to give an offered instruction to the effect that Hammarberg had no authority "to change, modify or alter the contracts entered into between the Alexanders and the builders." The instruction undoubtedly correctly stated the law, but it related to a problem not involved in the action. There was no evidence introduced and no contention made that Hammarberg altered the Rahlves-Alexander contract. The contention was that the plans and specifications called for foundations constructed in the natural soil, and that Hammarberg negligently permitted the builders to breach that portion of the contract. The instruction was properly refused.

■ ■ Appellant next complains of the failure to give three proffered instructions on the duty of the Alexanders to minimize damages. While the court did not give the instructions offered by appellant, it did give the following instruction: "A person whose property has been damaged by the wrongful act of another is bound to exercise reasonable care and diligence to avoid loss and to minimize the damages, and he may not recover for losses which could have been prevented by reasonable efforts on his part and by expenditures that he might reasonably have made, *provided he is financially able to pay the cost of such expenditures.*" (Italics added.)

This instruction adequately covered the issue. But appellant urges that the court erred in modifying the instruction above quoted by adding thereto the last italicized clause. The modifying clause properly states the law. (*Valencia* v. *Shell Oil Co.*, 23 Cal.2d 840 [147 P.2d 558].)

Appellant next complains of the failure to give an instruc-

tion on the legal effect of contributory negligence on the part of the Alexanders, if such were found to exist. Contributory negligence was not pleaded in appellant's answer. Moreover, no evidence of contributory negligence was introduced. The evidence shows that as soon as the Alexanders suspected that the foundations were being incorrectly constructed, they communicated with Hammarberg, that he promised to remedy the defect, and reported that he had done so. ▮▮▮ Of course, where contributory negligence is not pleaded, and there is no evidence of such, it is not error to refuse to instruct on the issue. (*Dover* v. *Archambeault,* 57 Cal.App. 659 [208 P. 178] ; *Van Horn* v. *Pacific Refining & R. Co.,* 27 Cal.App. 105 [148 P. 951].)

▮▮▮ Appellant objects to the following instruction given by the trial court: ''When the negligent acts or omissions of two or more persons, whether committed independently or in the course of jointly directed conduct, contribute concurrently, and as proximate causes, to the injury or damage of another, each of such persons is liable. This is true regardless of the relative degree of contribution. It is no defense for one of such persons that some other person, not joined as a defendant in that action, participated in causing the injury or damage.''

Appellant claims that this instruction impliedly told the jury that it could disregard the Rahlves case completely. This construction of the instruction is unwarranted. The court was careful to instruct as to how the jury should treat the Rahlves judgment. It is instructed: ''You are instructed that there can be only one satisfaction for an injury. Therefore, as already stated, if you find that Captain and Mrs. Alexander have been injured as a proximate result of the negligence of Mr. Hammarberg, in a sum less than $2,027.45, you must find for the defendant, Paul H. Hammarberg, and if you find that Captain and Mrs. Alexander have been injured, as a proximate result of the negligence of Mr. Hammarberg, in a sum more than $2,027.45, you must reduce the amount of your finding for the damages sustained by the sum of $2,027.45, and your verdict should be for the difference between the amount of damages and the amount for which the plaintiffs have been compensated.''

While the jury was deliberating it asked to be instructed specifically as to whether the amount recovered in the Rahlves case should be deducted from the amount here awarded. The court answered this question by rereading the instruction last quoted above. After doing so, it stated: ''Now, that is about

all I can give you on that. I hope that is clear." Counsel for appellant responded: "That is clear, your Honor." Under such circumstances the jury could not possibly have been misled by the challenged instruction.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 25, 1951.