[Civ. No. 26986.   Second Dist., Div. Four.   Dec. 12, 1963.]

ARTHUR KLINELL, Plaintiff and Respondent, v. RICH-ARD C. SHIREY et al., Defendants and Appellants.

James F. Nelson, Ball, Hunt & Hart, Joseph A. Ball and Joseph D. Mullender, Jr., for Defendants and Appellants.

Arthur Klinell, in pro per., for Plaintiff and Respondent.

JEFFERSON, J.—This is an appeal from a judgment for plaintiff Arthur Klinell in an action for damages for wrongful attachment[1] brought against Richard D. Shirey who was the plaintiff in a prior action, and against Earl Hightower, Gene E. Gregg and David M. Garland, who were attorneys of record for Shirey in that action. By jury verdict, damages in the sum of $8,879.04 were awarded against all defendants. Notice of appeal was filed in behalf of all defendants and this opinion will determine the rights of all defendants. The briefs filed, however, are directed only to the appeal of attorneys Gregg and Hightower.

In his brief, plaintiff argues that defendants' notice of appeal is invalid and cannot support the appeal. Plaintiff maintains that attorney James F. Nelson was not authorized to sign the notice of appeal because, by minute order dated July 16, 1962, Ball, Hunt and Hart were substituted as attorneys of record for defendants. However, section 940 of the Code of Civil Procedure, providing that a notice of appeal must be signed by the attorney of record, was superseded by

---

[1] Referred to by plaintiff as malicious attachment.

Rule 1 of the Rules on Appeal, effective July 1, 1943. California Rules of Court, rule 1(a), now provides for signing of notice of appeal "by the appellant or by his attorney." In *Estate of Hultin*, 29 Cal.2d 825, 831, 832 [178 P.2d 756], the court held that the omission of the reference to "attorney of record" means that the attorney signing the notice of appeal no longer is required to be an attorney of record.

In June of 1957, plaintiff, a building contractor, hired defendant Shirey, a grading contractor, to do grading and excavation work on real property owned by plaintiff. The terms of the contract are in dispute. According to Shirey they agreed orally that the work would be performed on an hourly basis. According to plaintiff, the agreement was that he was to pay Shirey a total of $6,000 for the work. Plaintiff asserted that Shirey had said, "I will take the job for $6,000 and keep daily time sheets, and if it runs less, I will give you a credit."

The work was commenced in July 1957, and completed in the latter part of August 1957. Shirey's time sheets indicated the cost of the job to be $14,000. Plaintiff paid Shirey $9,000 as evidenced by four checks. Each check bore the printed notation "Endorsement of this check evidences payment in full of items set forth in voucher." The voucher on each check contained the address of the property on which the grading work had been performed. According to plaintiff, defendant Shirey had agreed to accept the last check in the amount of $4,000, dated September 10, 1957, in full payment for the work. Shirey denied this, maintaining that Klinell had paid $9,000 on account and had agreed to pay the balance when he sold the lot on which the work was performed.

Shortly after the work was completed, Shirey consulted an attorney (not a party to this action), who recorded a mechanic's lien on the property. The lien, however, expired with no suit being filed.

At some time during the summer of 1958 Shirey called defendant Hightower, of the firm of Hightower, Gregg & Garland, and stated that he needed an attorney. A meeting was arranged at Hightower's home, where the case was briefly discussed. Shirey explained his version of the oral contract, produced time sheets signed by Klinell and stated that Klinell still owed him $5,000; that Klinell had sold the property on which the grading was performed and had not paid him as had been agreed.

In the office of the firm of Hightower, Gregg and Garland,

the case was assigned to Garland who handled it for all practical purposes. There was no evidence that defendant Gregg was familiar with the case or that he even knew Shirey. A complaint and attachment papers were prepared and filed on November 19, 1958. The complaint alleged an oral contract upon which there was a balance due of $5,521.10. The writ of attachment was levied on Klinell's bank account, containing $1,376.68, and on a piece of real property owned by plaintiff to be referred to as Lot 38, which lot, according to plaintiff had a value of $25,000. Defendants Hightower and Garland did not know what the lot was worth nor did they make any investigation to determine its value at the time the attachment was run.

On January 14, 1959, an answer to Shirey's complaint was filed containing an affirmative defense of accord and satisfaction. The allegations were that the original contract price was $6,000; that $9,000 was paid; and that the final payment of $4,000 was accepted as full payment. The affidavit in support of defendant's motion for summary judgment contained copies of the four checks totaling the $9,000 that had been paid. A copy of a mechanic's lien release signed by Shirey was also introduced, which release acknowledged that the men employed by Shirey to do the grading on Lot 38 had been paid. This release did not by its terms affect Shirey's lien rights.

The conflict in the evidence was resolved by the trial court in favor of plaintiff and judgment was entered in his favor on December 15, 1959. A motion for new trial was denied on January 20, 1960, and on February 20, 1960, the judgment became final, no appeal having been filed. The writ of attachment was discharged on March 1, 1960.

During the pendency of the action between the contracting parties, plaintiff's attorney made three requests or demands with respect to the writ of attachment. On December 2, 1958, immediately after suit was filed, he asked for a release of the attachment. On September 30, 1959, shortly prior to trial, he requested a transfer of the attachment to another piece of real property; on December 2, 1959, after judgment was ordered but before it was entered, he again asked for a release of the attachment. None of these requests were complied with by defendants.

On June 16, 1960, plaintiff filed suit in the municipal court against Fidelity & Deposit Company of Maryland, the surety on the attachment bond (herein termed the surety action).

The complaint alleged damages resulting from the attachment totaling $9,122.71. The amount of the bond, the limit of the surety's liability, was $1,390. The prayer was for $3,000, which was the extent of the municipal court's jurisdiction.

On August 12, 1960, the action for wrongful attachment now before this court, was filed. The complaint alleged damages which were practically the same as the damages alleged in the municipal court action and in addition alleged damages for loss of profits and for punitive damages. The action in municipal court against the surety was tried first on February 7, 1961, resulting in judgment for plaintiff in the amount of $949.46, plus costs of $15.55, and that judgment was satisfied on March 14, 1961.

The instant action was called for trial on March 23, 1962. At its commencement a plea of res judicata was tendered, based on the municipal court judgment. The trial court granted defendants' motion to amend the pleadings and the pretrial order so as to raise the issue of res judicata,[2] but denied the plea, ruling that the only effect to be given to the municipal court judgment would be to deduct the amount of the judgment from any damages awarded plaintiff for wrongful attachment. An instruction to this effect was subsequently given, and the jury returned a verdict for plaintiff in the amount of $8,879.04. No punitive damages were awarded. After denial of motions for judgment notwithstanding the verdict and for new trial, this appeal followed.

Defendants contend the municipal court judgment is res judicata in this action. It is argued the issue of damages in that action was identical with the issue of damages in this action for wrongful attachment, and that the municipal court judgment has conclusively determined the amount of all of plaintiff's damage resulting from the attachment. We are in agreement with this contention.

■ "The doctrine of res judicata has a double aspect: (1) It 'precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction.' (2) 'Any issue necessarily decided

---

[2]The trial court has jurisdiction to allow such amendments; had plaintiff regarded himself as prejudiced by the fact that the issue was not tendered until some months after the judgment relied on became final, his remedy was to seek a continuance (Code Civ. Proc. § 473; 2 Witkin, Cal. Procedure, 1605-1610). Further, since the new issue raised only matters of law, which plaintiff argued both to the trial court and to us, no prejudice is apparent.

in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action.' [Citations.]'' (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601, 604 [25 Cal. Rptr. 559, 375 P.2d 439]; see also *Bernhard* v. *Bank of America,* 19 Cal.2d 807, 810 [122 P.2d 892].)

The causes of action in the surety action and in this case being concededly different, our concern is with the latter aspect, commonly referred to as collateral estoppel. In the *Bernhard* case, *supra,* it was held that three questions are pertinent in determining whether the plea is valid: ''Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?'' (19 Cal.2d 807 at p. 813.)

The questions concerning the finality of the prior judgment and the identity of parties are not matters about which there can be any dispute. The judgment in the surety action was entered February 8, 1961. No appeal having been taken, the judgment was final when the plea of res judicata was asserted at the commencement of trial in the instant action, on May 2, 1962. Since plaintiff was a party in both actions, and is the one against whom the plea is asserted, the identity of parties requirement is met under the rule established in *Bernhard* v. *Bank of America, supra,* 19 Cal.2d 807, 813 [122 P.2d 892].

In dispute is the question of the identity of the issues in the two actions. We are of the view that the issue of damages in the case before us is in fact the same issue of damages which was determined in the action against the surety: that the doctrine of collateral estoppel was applicable, and the trial court erred in not so holding.

In the instant action the complaint alleges the same items of damages alleged in the surety action, with three exceptions: the amount of costs is listed as $24.30 instead of $27; there is an additional allegation of loss of profits; and, punitive damages are sought.

The trial judge ruled that the issues were different because the surety action was based on a contract and the instant suit in tort; that the measure of damages for tort is different from that for contract. In so holding the court relied on the case of *Alexander* v. *Hammarberg,* 103 Cal.App.2d 872 [230 P.2d 399]. The plaintiffs in that case brought suit against the

builders of plaintiffs' home, seeking damages for the alleged negligent performance of the contract to build the home. Thereafter plaintiffs sued the architect, whom they had employed to draw the plans for the home and to supervise its construction, for damages for negligence in his supervision of the construction of the home. The court held that a judgment against the builders was not res judicata in plaintiffs' subsequent action against the architect. The court stated that the issues in the two cases were not "identical" within the meaning of the *Bernhard* v. *Bank of America* case, *supra,* 19 Cal.2d 807, 813. The ruling in *Alexander* v. *Hammarberg, supra,* was not made on the ground that there was a difference between tort and contract damages. The cause of action in each suit was the same, namely, negligent performance of a contract. The basis of the decision was that the architect and the building contractor were not joint tortfeasors, but that each was independently liable for the portion of the damages caused by his own negligence.

Moreover, here, defendants argue that a suit against a surety on an attachment bond is not a suit on a contract. We agree. ■ A suit on an attachment bond is not governed by Civil Code, section 3300, defining contract damages, but by the Code of Civil Procedure, section 539, requiring, in effect, that a plaintiff must file an undertaking with two or more sureties to pay all costs awarded to the defendant, should he prevail, and all *damages sustained by reason of the attachment,* not exceeding the limits of the undertaking. Civil Code section 3300 provides for damages for *breach* of an obligation arising out of a contract.

The suit against the surety on an attachment bond is not for the breach of a contract. The surety's obligation arises by occurrence of a condition upon which the surety has agreed to become liable *for all damages sustained by reason of the attachment.* This liability is specifically limited by Code of Civil Procedure section 539 to the amount of the bond, but within that limit the measure of damages is the same. ■ The surety may even be liable for punitive damages. (*Barlin* v. *Barlin,* 156 Cal.App.2d 143, 144 [319 P.2d 87]. As stated in *Reachi* v. *National Auto. & Cas. Ins. Co.,* 37 Cal.2d 808, at page 811 [236 P.2d 151], the measure of damages against a surety is "... the actual expense and loss necessarily and proximately caused by the levy."

■ The surety's liability, therefore, is not limited to a contract, as distinguished from a tort, measure of damages,

An attachment bond is in actuality a type of insurance. It is insurance that the defendant in an attachment action will be paid, within the limits of the bond, any damages he sustains by reason of the levy. Within the limits of the bond the measure of damages is no different than that which may be recovered from the party who actually levied the attachment.

There is no merit in plaintiff's argument that the defense of res judicata may not be asserted because the judgment in the surety action did not fully litigate the damage question, since the limit of the surety's liability was less than the amount of the damages sustained by reason of the attachment. The municipal court judgment was for $949.46, well within the amount of the bond of $1,390.

Nor does it make any difference that additional items of damages were alleged, namely, loss of profits in the amount of $20,000, and punitive damages in the sum of $5,000. It is well established that a party cannot split an issue by litigating a part of it in one action, and then the balance of it in another lawsuit. As pointed out by defendants, the doctrine of res judicata or collateral estoppel forecloses redetermination, not only of all matters expressly litigated, but of all matters which could have been urged in support of the issue determined. (*Price* v. *Sixth District Agriculture Assn.*, 201 Cal. 502 [258 P. 387]; *Pacific Mut. Life Ins. Co.* v. *McConnell*, 44 Cal.2d 715, 724-725 [285 P.2d 636].) We conclude that the issue of damages, having been determined in the action against the surety, is res judicata. In so holding, it becomes unnecessary for us to pass on defendants' contention that the evidence was insufficient to support the judgment.

Since there can be no dispute as to the operative facts, a new trial is unnecessary. The judgment is reversed with directions to enter judgment in favor of defendants.

Burke, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied December 30, 1963, and respondent's petition for a hearing by the Supreme Court was denied February 5, 1964.