ALPH DAILY, PLAINTIFF-APPELLANT, v. HAROLD M. SOMBERG AND JOHN J. FLANAGAN, DEFENDANTS-RESPONDENTS.

Argued October 6, 1958—Decided December 1, 1958.

*Mr. Bernard Chazen* argued the cause for the appellant (*Mr. Nathan Baker,* of counsel; *Messrs. Baker, Garber & Chazen,* attorneys).

*Mr. H. Curtis Meanor* argued the cause for the respondent Harold M. Somberg, and *Mr. William P. Braun, Sr.,* argued the cause for the respondent John J. Flanagan (*Mr. Arthur J. Blake,* of counsel; *Messrs. Emory, Langan, Lamb & Blake,* attorneys for defendant-respondent Harold M. Somberg; *Messrs. Braun & Hoey,* attorneys for defendant-respondent John J. Flanagan).

The opinion of the court was delivered by

JACOBS, J. The plaintiff appealed to the Appellate Division from the summary judgment which the Law Division had entered in favor of the defendants. See *Daily v. Somberg,* 49 *N. J. Super.* 469 (1958). We certified on our own motion.

On January 14, 1954 the plaintiff was seriously injured in an automobile accident in Ohio. He was in an Ohio hospital for almost a month and on February 10, 1954 was transferred to St. Michael's Hospital in Newark, New Jersey. While at St. Michael's he was under the care of the defendants, Dr. Somberg and Dr. Flanagan. On May 22, 1954 the plaintiff was operated on by the defendants. On June 7, 1954 he was discharged from St. Michael's but continued under the care of Dr. Flanagan for some time. Thereafter he came under the care of physicians at the University Hospital, New York University-Bellevue Medical Center who operated on him on December 17, 1954. It is asserted that the plaintiff is now a paraplegic.

The plaintiff instituted an action in the United States District Court for the Southern District of New York against Dealer's Transport Company and its employee Virgil E. Elliot. In that action the plaintiff charged that the Ohio accident was the result of the negligence of the Transport Company and its employee and sought recovery for all injuries flowing therefrom. In April 1956 that action resulted in a mistrial. While it was awaiting retrial the plaintiff on May 2, 1956 filed his complaint in the New Jersey Superior Court in which he sought recovery from the defendants Dr. Somberg and Dr. Flanagan. In his

first count he alleged (1) that the defendants were negligent in their "diagnosis" and "treatment," in failing to perform "adequate, complete, and proper surgery" and in failing to use reasonable care in their "performance of surgery and in treatment," and (2) that because of their negligence the plaintiff's condition resulting from injuries sustained in the accident of January 14, 1954 "was not alleviated, improved or cured, but became worse." In his second count he alleged that the defendants had performed their medical and surgical services "pursuant to a contract made for plaintiff's benefit agreeing thereby to perform all services which they represented themselves to be fully competent to render"; that the defendants "failed to perform their obligations" under the contract; and that by reason of the breach of contract the plaintiff's injuries "were not improved but became worse." *Cf. Von Blumenthal v. Cassola*, 166 *Misc.* 744, 3 *N. Y. S. 2d* 246 (*Sup. Ct.* 1938), affirmed 254 *App. Div.* 857, 6 *N. Y. S. 2d* 342 (1938).

On June 12, 1956 the plaintiff settled his case against Dealer's Transport Company and its employee. He received the sum of $139,000 and executed a formal release to "Dealer's Transport Company, a corporation and Dealers Transit, Inc., as its successor, and Virgil E. Elliot (hereinafter collectively referred to as the 'Releasees')." The release provided that the plaintiff (and his wife) did thereby release and discharge the "releasees" as well as their "agents, servants, employees, officers, insurers, heirs, executors, administrators, successors and assigns" from all claims which they have against the "releasees," including claims arising out of the accident of January 14, 1954 or connected with the action in the United States District Court for the Southern District of New York. The release set forth on its face that the releasees denied that they were liable for any damages sustained by the plaintiff and that the sum paid by them was "paid in settlement and compromise of all claims without in any way admitting liability." It also set forth that the plaintiff released his claims, "including all those for known and unknown and anticipated

and unanticipated injuries and damages," and that the plaintiff had relied on the advice of his counsel "respecting the legal liability of the parties released for the claims hereby released." The release was executed in New Jersey.

On June 21, 1957 the defendants Drs. Somberg and Flanagan filed their answer and demand for trial by jury in the New Jersey Superior Court. They denied the allegations of negligence and breach of contract and asserted, as a separate defense, that the release of Dealer's Transport Company constituted a complete bar to the plaintiff's New Jersey action against them. On November 1, 1957 a pretrial order was entered and it was amended on December 13, 1957. As amended, the order set forth that the plaintiff charged the defendants with breach of contract and negligence in failing "to act promptly to perform laminectomy and spine fusion operations"; in delaying "unreasonably in performing necessary tests and myelograms"; in delaying unreasonably and neglecting "to make prompt examinations, diagnosis, treatment, care and surgery"; in failing "to promptly perform operations or take measures for decompression for the alleviation of the plaintiff's condition"; and in permitting and advising "the plaintiff after the alleged performance of laminectomy to travel about on crutches without taking adequate safeguards and protection for the health and condition of the plaintiff." The pretrial order also set forth, among other matters, the plaintiff's charge that because of the negligence of the defendants the plaintiff's condition "was not alleviated, improved or cured, but became worse."

On January 31, 1958 the defendants moved for summary judgment of dismissal on the single ground "that the plaintiff, having received satisfaction in full, for all of the damages alleged against these defendants and having executed an unqualified Release under seal for any causes of action that he might have had against the defendants or either of them has been extinguished." In support of the motion, the defendants' counsel contended that the law of Ohio rather than New Jersey governed the matter, and that

under the law of Ohio the release to Dealer's Transport Company barred the plaintiff's claim against Drs. Somberg and Flanagan. See *Tanner v. Espey,* 128 *Ohio St.* 82, 190 *N. E.* 229 (1934); *Knight v. Strong,* 101 *Ohio App.* 347, 140 *N. E. 2d* 9 (1955). In opposition to the motion, the plaintiff's counsel contended that the law of New Jersey rather than Ohio controlled and that under the law of New Jersey the release of Dealer's Transport Company did not release Drs. Somberg and Flanagan unless it was so intended or the consideration received by the plaintiff constituted full compensation for all of his injuries or was accepted as such. See *Breen v. Peck,* 48 *N. J. Super.* 160 (*App. Div.* 1957), affirmed 28 *N. J.* 351 (1958); *Adolph Gottscho, Inc., v. American Marking Corp.,* 18 *N. J.* 467, 470 (1955), *certiorari* denied 350 *U. S.* 834, 76 *S. Ct.* 69, 100 *L. Ed.* 744 (1955). The plaintiff's position was that there was no intent to release Drs. Somberg and Flanagan and that the consideration received by him did not constitute full compensation for all of his injuries and was not accepted as such; and it was urged that these were factual issues which could not be determined on the defendants' application for summary judgment but would have to await trial. See *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.* 67, 85 (1954), 25 *N. J.* 17 (1957); *Adolph Gottscho, Inc., v. American Marking Corp., supra.*

On April 7, 1958 the Law Division granted the defendants' motion and ordered summary judgment in their favor. It found that the Ohio law was controlling and that under that law the release of Dealer's Transport Company automatically released Drs. Somberg and Flanagan unless the plaintiff could establish that their alleged negligent conduct produced a new and independent injury (see 49 *N. J. Super.* at *page* 476) rather than an aggravation of the injuries sustained in the accident of January 14, 1954. See *Tanner v. Espey, supra. Cf. Mainfort v. Giannestras,* 49 *Ohio O.* 440, 111 *N. E. 2d* 692, 694 (*Ohio C. P.* 1951), where the court indicated that the allegations of the malpractice complaint before it, if established, would present a jury question as to whether the negligence of the defendant doctor "merely

aggravated the original injury or brought into existence an independent injury." The Law Division concluded that the plaintiff's complaint and the pretrial order alleged only an aggravation and not a new and independent injury and that since the plaintiff could have received full compensation for all the proximately related injuries (including the alleged aggravation by Drs. Somberg and Flanagan) upon recovery in his action against Dealer's Transport Company (see *Tanner v. Espey, supra*), his settlement and release of that action automatically barred, under Ohio law, his claim against the defendant doctors. See *Note, "Release of one responsible for injury as affecting liability of physician or surgeon for negligent treatment of injury,"* 40 *A. L. R. 2d* 1075 (1955); *Note, "Liability of one causing personal injury for consequences of negligence, mistake, or lack of skill of physician or surgeon,"* 126 *A. L. R.* 912 (1940).

The courts of New Jersey have generally expressed our conflict of laws principles in terms of comity. See *Masci v. Young,* 109 *N. J. L.* 453, 454 (*E. & A.* 1932), affirmed 289 *U. S.* 253, 53 *S. Ct.* 599, 77 *L. Ed.* 1158 (1933); *Zurich General Accident Liability Ins. Co. v. Ackerman Bros., Inc.,* 124 *N. J. L.* 187, 191 (*E. & A.* 1940); *Flagg v. Baldwin,* 38 *N. J. Eq.* 219, 224 (*E. & A.* 1884). This comity approach has often been criticized and other theories, notably the vested rights and local law theories, have been advanced but have in turn not escaped attack. See *Cheatham, "American Theories of Conflict of Laws: Their Role and Utility,"* 58 *Harv. L. Rev.* 361 (1945); *Goodrich, Conflict of Laws* 9 (*3d ed.* 1949). For our part, we accept conflict of laws principles as part of the common law of our State and as resting on basic policy considerations of justice and fairness and the other traditional values in our law. *Cf. Wilson v. Faull,* 27 *N. J.* 105, 124 (1958); *Lorenzen, "Territoriality, Public Policy and the Conflict of Laws,"* 33 *Yale L. J.* 736, 748 (1924).

██ It is well recognized that where all of the tortious conduct and its consequences take place within a single foreign state the law of that state—the place of the wrong— will control. See *Masci v. Young, supra; Clement v. Atlantic*

*Casualty Ins. Co.*, 13 *N. J.* 439, 442 (1953); *Restatement, Conflict of Laws* § 377 *et seq.* (1934). This conflict of laws principle gives fair recognition to the foreign state's legitimate interests and to the sound public policy which dictates that the incidents of a transaction should be determined by a significantly connected body of law. In addition, it well serves the ends of certainty, uniformity and predictability. If, however, the tortious conduct takes place in the foreign state and injurious consequences take place in the state of the forum, the choice of law becomes more troublesome for the state of the forum is now vitally interested and may perhaps have adequate cause for applying its own law. And if the tortious conduct in the foreign state is followed in the state of the forum, not only by injurious consequences but also by independent tortious conduct by other tortfeasors, then it seems wholly evident that the state of the forum rather than the foreign state is the one with the dominant interest and with the stronger policy reasons for applying its own just legal principles. See *Cheatham & Reese, "Choice of the Applicable Law,"* 52 *Colum. L. Rev.* 959 (1952); *Hancock, "Choice-of-Law Policies in Multiple Contact Cases,"* 5 *Toronto L. J.* 133 (1943). *Cf. Rheinstein, "The Place of Wrong: A Study in the Method of Case Law,"* 19 *Tulane L. Rev.* 4 (1944).

The many cases cited to us dealt with situations where the original accident and the conduct of the doctors took place within the same foreign state and are not pertinent here. The conduct of Doctors Somberg and Flanagan took place not in Ohio but in New Jersey and the alleged harm they inflicted upon the plaintiff occurred within New Jersey. Insofar as the plaintiff's claim against the doctors is concerned, the place of the wrong was New Jersey and not Ohio; indeed both counsel before us appear to agree that the wrong alleged in the plaintiff's New Jersey action was a several tort committed in New Jersey and not one committed jointly with the Dealer's Transport Company of Ohio. See *Ash v. Mortensen*, 24 *Cal.* 2*d* 654, 150 *P.* 2*d* 876 (*Sup. Ct.* 1944); *Fisher v. Milwaukee Electric Ry. & Light Co.*, 173 *Wis.* 57, 180 *N. W.* 269 (*Sup. Ct.* 1920). *Cf.*

*Ristan v. Frantzen,* 26 *N. J. Super.* 225 (*App. Div.* 1953), affirmed 14 *N. J.* 455 (1954). In the *Mortensen* case the plaintiff recovered a judgment against the negligent motorist and then sued doctors who allegedly treated his injuries in negligent fashion; the California Supreme Court pointed out that the successive acts of the motorist and the doctors, differing in time and place of commission as well as in nature, produced separate injuries and gave rise to distinct causes of action, and that the motorist and the doctors were "independent rather than joint wrongdoers." [24 *Cal. 2d* 654, 150 *P. 2d* 878] And in the *Light Co.* case the Wisconsin Supreme Court remarked that the tortfeasor who originally injured the plaintiff and the doctor who thereafter allegedly treated the plaintiff's injuries in negligent fashion were "not in any sense of the term joint tort-feasors." [173 *Wis.* 57, 180 *N. W.* 270]

The State of Ohio and the parties to the accident may be justifiably interested in having the Ohio law apply to the Ohio tort and its release. But they have no justifiable interest in having the Ohio law apply to the New Jersey tort and its release. The entire transaction and all of the relations between the plaintiff and the doctors took place within New Jersey and only the application of New Jersey's law would conform with the reasonable expectations of the parties. See *Rheinstein, supra.* The doctors' duty of exercising reasonable care was fixed by the law of New Jersey and the protective rights of the plaintiff who subjected himself to their care in New Jersey were likewise fixed by the law of New Jersey. See *Young v. Crescente,* 132 *N. J. L.* 223 (*E. & A.* 1944). If, as alleged, there was malpractice in New Jersey, there is no reason for disabling the plaintiff from maintaining his malpractice claim in New Jersey unless the plaintiff released it in accordance with the law of New Jersey. The release, executed in New Jersey, of his Ohio tort claim against Dealer's Transport Company, may be governed by the Ohio law insofar as the Ohio tort claim is concerned (*Preine v. Freeman,* 112 *F. Supp.* 257 (*D. C. E. D. Va.* 1953)); but its effect on the New Jersey

tort claim must, in the light of the pertinent interests and policy considerations, be governed by the law of New Jersey.

In *Adams v. DeYoe*, 11 *N. J. Misc.* 319 (*Sup. Ct.* 1933), the plaintiff settled his claim against the owner of the automobile which had injured him and sought to continue his action against the doctor who allegedly treated his injury in negligent fashion. The trial court entered judgment for the doctor on the ground that the release of the owner automatically operated as a release of the doctor; it relied entirely on the authority of foreign state cases and made no attempt to find or explore supporting reasons. In *Ash v. Mortensen, supra*, the court forcefully rejected the holding in *Adams*. The plaintiff Edith Ash had been injured in an automobile accident and had recovered a $15,000 judgment against Wubben, the negligent motorist. She settled with Wubben for less than $6,000 and gave him a release. She then sued the defendant doctors, alleging that they had negligently treated her. The doctors contended that they were released by the release of Wubben, but this contention, though sustained by decisions elsewhere, was held to be insupportable in reason and justice. In the course of his opinion for the California Supreme Court, Chief Justice Gibson had this to say:

"Defendants insist, however, that without regard to the evidence introduced in the action against Wubben, and thus without regard to the nature and extent of the recovery therein, the release of Wubben from all liability operated to discharge them from liability for any negligent aggravation of the original injury. In their view, the amount of damages sustained by plaintiff, the sum received as consideration for the release, and the relation between the two, the intention of the parties, and the fact that Wubben and defendant doctors are independent rather than joint wrongdoers, are immaterial. In other words, defendants seek to substitute a rule of law for the factual defense of double recovery. The rule contended for has been adopted in a number of jurisdictions. *Feinstone v. Allison Hospital*, 106 *Fla.* 302, 143 *So.* 251; *Paris v. Crittenden*, 142 *Kan.* 296, 46 *P. 2d* 633; *Smith v. Mann*, 184 *Minn.* 485, 239 *N. W.* 223; *Adams v. DeYoe*, 166 *A.* 485, 11 *N. J. Misc.* 319; *Milks v. McIver*, 264 *N. Y.* 267, 190 *N. E.* 487; *Tanner v. Espey*, 128 *Ohio St.* 82, 190 *N. E.* 229; *Thompson v. Fox*, 326 *Pa.* 209, 192 *A.* 107, 112 *A. L. R.* 550; *Martin v. Cunningham*, 93 *Wash.* 517, 161 *P.* 355, *L. R. A.* 1918A, 225; *Mier v. Yoho*, 114 *W. Va.* 248, 171 *S. E.* 535; *cf. Wells v. Gould*, 131 *Me.* 192, 160 *A.* 30; 112 *A. L. R.* 553. But

the conclusion that the release of the original wrongdoer releases the attending doctor from liability for malpractice has been reached by treating the independent wrongdoers as joint tort feasors or applying, by analogy, the common-law rule of unity of discharge affecting joint tort feasors. The common-law rule of unity of discharge is based on the concept of the unity of a cause of action against joint tort feasors, and its application to the facts of the present case would give the independent tort feasors herein an advantage wholly inconsistent with the nature of their liability. Moreover, the rule contended for by defendants would stifle compromises, favored in the law, inasmuch as the injured person could not effect a settlement with the original wrongdoer without surrendering his separate cause of action against one who, by his independent tortious act, aggravated the injury.

A release of a cause of action against a wrongdoer is not a release of a separate or distinct cause of action against another independent wrongdoer. It follows that the mere release of Wubben from liability did not result in the discharge of the cause of action against defendants. We are of the opinion that a release of the original wrongdoer should release an attending doctor from liability for aggravation of the injury 'if there has been full compensation for both injuries, but not otherwise.' *Prosser, Joint Torts and Several Liability*, 25 *Cal. L. Rev.* 413, 435; *Wheat v. Carter*, 79 *N. H.* 150, 106 *A.* 602; *cf. Smith v. Coleman*, 46 *Cal. App.* 2d 507, 513, 116 *P.* 2d 133; *Wallner v. Barry*, 207 *Cal.* 465, 473, 279 *P.* 148." (150 *P.* 2d, at *page* 878)

Later California cases have consistently applied *Mortensen* to situations where the plaintiff had settled with the original tortfeasor and had released him without the entry of judgment and was then permitted to proceed against alleged independent tortfeasors, such as the defendant doctors here. See *Dickow v. Cookinham,* 123 *Cal. App.* 2d 81, 266 *P.* 2d 63, 40 *A. L. R.* 2d 1066 (*Dist. Ct. App.* 1954); *Gerald v. San Francisco Unified School Dist.,* 121 *Cal. App.* 2d 761, 264 *P.* 2d 90 (*Dist. Ct. App.* 1953). *Cf. Alexander v. Hammarberg,* 103 *Cal. App.* 2d 872, 230 *P.* 2d 399 (*Dist. Ct. App.* 1951). The trial court's decision in *Adams,* which *Mortensen* declined to follow, never reached an appellate court in New Jersey and has necessarily been rejected by our recent embracement of the principles fully discussed in *Breen v. Peck, supra.* There we approved the modern and eminently just rule that a release of one joint tortfeasor does not release other joint tortfeasors unless it is so intended or the consideration constitutes full compensation or is accepted as such. Where, as in *Adams*

and here, the court is concerned not with a joint tort but with successive independent torts, it is even more evident that the release of the original tortfeasor may not rationally be given the effect of automatically releasing the successive tortfeasor who, though he has made no payment whatever towards satisfaction of the injury he wrongfully inflicted, seeks a windfall because of the compromise of the claim against the original tortfeasor. See *Breen v. Peck, supra; Ash v. Mortensen, supra; Wheat v. Carter,* 79 *N. H.* 150, 106 *A.* 602 (*Sup. Ct.* 1919).

If the release of Dealer's Transport Company was actually intended to release the doctors, or if the amount paid by Dealer's actually constituted full compensation for the plaintiff's claims against Dealer's and the doctors or was accepted as such, then the plaintiff may not fairly or equitably seek further recovery. But these issues of intent and full compensation are factual in nature and could not properly be determined by the trial court on the showing made on the defendants' motion for summary judgment. See *Breen v. Peck, supra.* The release to Dealer's did not on its face suggest that there was any intent to release the doctors nor did it suggest that the plaintiff received full compensation for his injuries. On the contrary, it named only Dealer's, its successor corporation and its employee Elliot, as the releasees and it expressly set forth that the sum paid to the plaintiff was in settlement and compromise and without admission of liability. See *Steenhuis v. Holland,* 217 *Ala.* 105, 115 *So.* 2, 4 (*Sup. Ct.* 1927):

"When the release shows it was in compromise of the liability of the party to whom given, with no reference to a full satisfaction as against others, we can see no just presumption that they had in mind a release of others in whom the released party had no interest."

*Cf. Hauth v. Sambo,* 100 *Neb.* 160, 158 *N. W.* 1036, 1040 (*Sup. Ct.* 1916).

*Ash v. Mortensen, supra,* and *Breen v. Peck, supra,* cited the conflicting views as to who should bear the burden of establishing whether the releasor received full compensation and whether the release was intended to release

strangers. See *McKenna v. Austin,* 77 *U. S. App. D. C.* 228, 134 *F. 2d* 659, 664, 148 *A. L. R.* 1253 (*D. C. Cir.* 1943); *Prosser, Torts* 246 (*2d ed.* 1955). In each case the court was of the opinion that, under the particular circumstances presented to it, the person who advanced the release as a bar could fairly be expected to carry the burden of his defense within the controlling legal principles. Similarly, we are satisfied that, at least here, where the release disclosed on its face that it was given to the named releasees who had denied liability and had made payment by way of compromise and settlement, the alleged wrongdoers, who were not parties to the release and had made no payment towards satisfaction of the plaintiff's injuries, may fairly be called upon to show that the release was intended to discharge them or that the plaintiff had received full compensation. See *Ash v. Mortensen, supra; McKenna v. Austin, supra. Cf. Breen v. Peck, supra.*

The only remaining matter which now requires mention is the defendants' contention that the plaintiff's release transferred to Dealer's whatever claim he had against them and that he therefore has "no justiciable interest in this controversy." They suggest rights in Dealer's by way of subrogation (*Retelle v. Sullivan,* 191 *Wis.* 576, 211 *N. W.* 756, 50 *A. L. R.* 1106 (*Sup. Ct.* 1927)) or indemnity (*Popkin Bros., Inc., v. Volk's Tire Co.,* 20 *N. J. Misc.* 1 (*Sup. Ct.* 1941)), and that the defendants are consequently "confronted with a possibility of double liability." We find no substantial merit in the defendants' contention. Subrogation is an equitable doctrine which is designed to further the interests of justice and which has generally been considered unavailable when the original debt or claim was not fully paid. *Standard Accident Ins. Co. v. Pellecchia,* 15 *N. J.* 162 (1954); *Receivers of New Jersey Midland Railway Co. v. Wortendyke,* 27 *N. J. Eq.* 658 (*E. & A.* 1876). And indemnity amongst tortfeasors has generally been confined to those whose negligence "is not morally culpable but is merely constructive, technical, imputed or vicarious." *Public Service Electric & Gas Co. v. Waldroup,* 38 *N. J. Super.* 419, 432 (*App. Div.* 1955).

Dealer's was charged with having engaged, through its agent, in conduct which resulted in causally related injuries for which it was allegedly entirely responsible and for part of which the doctors were also allegedly responsible because of their own wrongful conduct. See *Daily v. Dealer's Transport Company*, 16 *F. R. D.* 566 (*D. C. S. D. N. Y.* 1954). When the claim against it was settled Dealer's was apparently eliminated from further relation to the entire matter and, under the principles of *Breen v. Peck, supra*, the plaintiff was left with his right to proceed against the doctors unless it appeared that the plaintiff had been fully compensated or that the release he executed was intended to absolve the doctors. Dealer's has never asserted nor is it here asserting that it has any rights by way of subrogation or indemnity, and the defendants here are not in anywise endangered by the suggested possibility that Dealer's may seek to assert that it is entitled to reimbursement for what it paid towards the harm which followed upon the alleged negligence of the doctors. If it should appear at the trial that the plaintiff has received full compensation from Dealer's for the injuries allegedly sustained at the hands of the doctors, then admittedly he will receive no further recovery. If, on the other hand, it should appear that he has received partial compensation from Dealer's for such injuries, the amount of the partial compensation will be credited against any sum otherwise recoverable by the plaintiff; in no event will there be duplicating compensation to the plaintiff or duplicating liability on the part of the defendants. *Cf. Breen v. Peck, supra; Ash v. Mortensen, supra; Dickow v. Cookinham, supra; Gerald v. San Francisco Unified School Dist., supra; Alexander v. Hammarberg, supra.*

The summary judgment in the Law Division is reversed and the cause is remanded for trial.

*For reversal*—Chief Justice WEINTRAUB, and Justices WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For affirmance*—None.