826 F.2d 1340
 Ethel PETRELLA, Administratrix ad Prosequendum of the Estate
of Louis Granato, a/k/a Louis Petrella, Appellant,
v.
Bassam T. KASHLAN, M.D., Theodore Zaleski, M.D., Martha L.
Schreiber, M.D., and Jersey Shore Medical Center.
 No. 86-5818.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
 Aug. 4, 1987.
Decided Aug. 27, 1987.
Rehearing and Rehearing En Banc Denied Sept. 25, 1987.
 
 Gary D. Ginsberg, Nathan A. Friedman, P.A., Cherry Hill, N.J., for appellant.
 Richard A. Grossman, Grossman & Kruttschnitt, P.C., Toms River, N.J., for Bassam T. Kashlan.
 Donald Grasso, John J. Mensching, Orlovsky, Grasso & Moody, P.A., Toms River, N.J., for Theodore Zaleski.
 Joel B. Korin, George & Korin, P.A., Woodbury, N.J., for Martha Schreiber.
 Richard A. Amdur, Oakhurst, N.J., for Jersey Shore Medical Center.
 Before SEITZ, MANSMANN, and GREENBERG, Circuit Judges.
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 This matter comes before this court on appeal from an order of the district court dated November 3, 1986, in this wrongful death action predicated on defendants' alleged medical malpractice. Jurisdiction in the district court was based on diversity of citizenship. 28 U.S.C. Sec. 1332. The action was dismissed by the district judge on defendants' motion made after jury selection and opening statements. The trial judge ruled that damages were to be determined under the New Jersey wrongful death act, N.J.Stat.Ann. Sec. 2A:31-1 et seq. (West 1952), and, as plaintiff had been fully compensated by prior settlements, she was barred from further recovery.
 
 
 2
 Though the record is not clear as to some facts, the basic circumstances of the case are not in dispute. Louis Granato, a/k/a Louis Petrella, 15 years of age, then a resident of Florida, was in New Jersey on July 12, 1982, visiting his father, a New Jersey resident. At that time Louis resided with his mother, Ethel Petrella, who, as administratrix ad prosequendum of his estate, is the plaintiff in this action. Louis' parents are divorced. On that date Louis was riding on the hood of an automobile driven by a New Jersey resident, Dante Metta, and owned by Dante's father, Frank Metta. Unfortunately, Louis fell from the hood and suffered head injuries leading to his admission to the Jersey Shore Medical Center in Neptune, New Jersey. While at first his condition improved, on July 26, 1982 it was discovered that he had developed gas gangrene in his left leg. Though surgery was then performed, Louis died on that day from an overwhelming infection.
 
 
 3
 These events led to plaintiff making two initial recoveries totaling $200,000 from insurance carriers. The district judge in his written opinion of December 22, 1986 described these recoveries as having been made in "a wrongful death action" in Florida, though there is an indication in the record that the settlements were obtained without formal proceedings. In any event, the total settlement was composed of a $25,000 contribution, its policy limit, from the Mettas' insurance company, and a $175,000 payment on underinsured motorist coverage on an automobile insurance policy issued to plaintiff's second husband, Louis' stepfather. Following settlement of these initial claims, plaintiff brought an action against Louis' father in a Florida state court for allocation of the proceeds of the settlement under the Florida Wrongful Death Act. This resulted in a division of 75% to plaintiff, individually, and 25% to Louis' father. Fla.Stat.Ann. Sec. 768.16 et seq. (West 1986).
 
 
 4
 After these initial settlements, plaintiff brought this wrongful death action in New Jersey naming as defendants the hospital and three physicians who attended Louis.[1] Subsequently, plaintiff served a motion seeking an order that the Florida rather than New Jersey law of damages applies in this action, an important issue as Florida, unlike New Jersey, permits recovery by the parents of a deceased child for their mental pain and suffering in a wrongful death action. Compare Fla.Stat.Ann. Sec. 768.21(4) (West 1986) with N.J.Stat.Ann. Sec. 2A:31-5 (West Supp.1987). The judge denied this motion, ruling that New Jersey law applied.
 
 
 5
 As we have indicated, when the matter was ready for trial in the district court, the case was dismissed on defendants' motions. In his subsequent written opinion of December 22, 1986, the judge fully set forth the reasons why he had dismissed the case. He explained that in this diversity case he used New Jersey conflicts of law principles to determine whether to apply Florida or New Jersey substantive law, as he was sitting in New Jersey. He then decided that New Jersey law would apply, citing Colley v. Harvey Cedars Marina, 422 F.Supp. 953 (D.N.J.1976), as New Jersey had an interest in protecting its residents from excessive damage awards. Thus, he rejected other district court decisions suggesting a contrary result. See, e.g., Pollock v. Barrickman, 610 F.Supp. 878 (D.N.J.1985); Foster v. Maldonado, 315 F.Supp. 1179 (D.N.J.1970), petition to appeal denied 433 F.2d 348 (3d Cir.1970).[2]
 
 
 6
 He then held that the entire $200,000 already received by plaintiff should be "set-off" against any possible recovery in the present action as plaintiff conceded this credit as to the $25,000 recovered from the Mettas' carrier and the $175,000 was regarded under New Jersey law as being in the nature of a tort rather than contract recovery.[3] Accordingly, if defendants were subsequent tortfeasors they were entitled to a credit of the $200,000 on any judgment against them. See Daily v. Somberg, 28 N.J. 372, 146 A.2d 676 (1958). He then stated that even though the original $200,000 settlement was not made with defendants and was not intended by plaintiff to release them, her action should be dismissed as it was "highly unlikely that plaintiff would have received a damage award of over $200,000 in this case." In reaching this conclusion he considered the elements of damages in a wrongful death action in New Jersey which are, as explained in Green v. Bittner, 85 N.J. 1, 424 A.2d 210 (1980), based on pecuniary losses. Finally, he said that "[g]iven the aforesaid factors used in determining pecuniary loss, the likelihood of a jury award of over $200,000 in this case is minimal" and that counsel had agreed that rarely if ever would a wrongful death verdict for a child of Louis' age reach $200,000 in New Jersey. This appeal followed.
 
 
 7
 In this appeal, plaintiff makes three principal contentions. First, she asserts that Florida rather than New Jersey law should govern damages. Second, she argues that the recovery from the underinsured motorists coverage should not be credited against any recovery made here. Her second position includes a contention that the $200,000 payments did not cover the same damages which she would have recovered if successful in the New Jersey wrongful death action. In this regard she points out that Louis had suffered injuries which affected him during his life and thus she asserts that a portion of the $200,000 must have been intended to compensate his estate for his pain and suffering. Alternatively, she claims that the settlements were based on Florida law and therefore "represented compensation for the parent's [sic] mental pain and suffering resulting from Louis Petrella's death" and that defendants are not entitled to credit for the settlements to the extent they so compensated Louis' parents. Third, she contends that regardless of what law should have been applied on damages, the court erred in holding as a matter of law that she had been fully compensated by the settlements. Our standard of review in this case involving interpretation and application of legal precepts is plenary. United States v. Adams, 759 F.2d 1099, 1106 (3d Cir.1985), cert. denied, 474 U.S. 906, 106 S.Ct. 275, 336, 88 L.Ed.2d 236 (1985).
 
 
 8
 We first address the choice of law question. The judge was, of course, correct in applying New Jersey law to resolve this issue. See Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under traditional New Jersey principles which selected the appropriate law based on the place of the tort and its consequences, there would have been no doubt that New Jersey law would have applied here. See Daily v. Somberg, supra, 28 N.J. at 379, 146 A.2d at 680-681. However, choice of law inquiries in New Jersey have been more intricate since Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967) adopted a government interest analysis to resolve those questions. Under the Mellk approach, the court first ascertains the governmental policies as reflected in the law of the jurisdictions possibly involved and then considers the contacts between the parties and the related jurisdictions. Only when a particular state's policies may be affected by the outcome of a case will it have sufficient interest to apply its law. See Henry v. Richardson-Merrill, Inc., 508 F.2d 28, 32 (3d Cir.1975).
 
 
 9
 We do not doubt that the policies of Florida and New Jersey are both implicated here. Louis was a resident of Florida and thus Florida obviously has a legitimate interest in the quantum of damages for his death being fixed under Florida law. On the other hand, the alleged malpractice was committed in New Jersey by persons who are or were at the time of the claimed tort New Jersey residents.[4] Inasmuch as N.J.Stat.Ann. Sec. 2A:31-5 (West Supp.1987) sets forth the type of damages that may be recovered in a wrongful death action, it reflects the New Jersey Legislature's determination both of what is fair for a plaintiff to recover and a defendant to pay in such a case. Accordingly, New Jersey's interest in this case is no less than Florida's and the judge correctly held that its law of damages should be applied.
 
 
 10
 The second question for resolution is whether defendants should receive a credit for the prior settlements. As we have indicated, the district court in effect credited the $200,000 against plaintiff's potential recovery to determine she had been fully satisfied. Plaintiff makes two objections to this. She first asserts that the $175,000 underinsured motorist recovery may not be credited to defendants at all as they are not entitled to the benefit of a payment made to plaintiff from a collateral source pursuant to a contract to which defendants were not parties. See Patusco v. Prince Macaroni, Inc., 50 N.J. 365, 235 A.2d 465 (1967). Second, she argues that the $200,000 settlements compensated her for different elements of damage than those recognized under the New Jersey wrongful death act.
 
 
 11
 We preliminarily note that all of the parties have briefed the collateral source issue on the basis of New Jersey law even though the insurance policy providing for the underinsured motorist coverage was probably delivered in Florida. Accordingly, we will apply New Jersey law in considering whether defendants are barred by the collateral source rule from seeking a credit for the $175,000 settlement.
 
 
 12
 We are satisfied that a recovery on an underinsured motorist coverage provision should be regarded as no different than a recovery from a tortfeasor. Payments pursuant to this coverage are dependent upon there being an underlying tort. See Wert v. Picciano, 189 N.J.Super. 178, 182, 459 A.2d 697 (Law Div.1982). In reality, underinsured motorist coverage is not different in character than uninsured motorist coverage. In both situations an insured attempts to provide for an adequate source of recovery in the event he is tortiously injured by another who has not provided that source, the distinction being that in one case the other party has provided no coverage while in the other he is inadequately covered. In these circumstances we believe the New Jersey courts would hold that New Jersey law indicating that liability of a carrier on uninsured motorist coverage is dependent on the uninsured motorist's liability, is applicable to underinsured motorist's coverage as well. See Midland Ins. Co. v. Colatrella, 102 N.J. 612, 616, 510 A.2d 30, 32 (1986); Montedoro v. Asbury Park, 174 N.J.Super. 305, 308, 416 A.2d 433, 435 (App.Div.1980). Thus, the collateral source rule does not bar defendants from seeking a credit predicated on the $175,000 underinsured motorist payment, as that payment will be treated as if paid by another tortfeasor. See Daily v. Somberg, supra, 28 N.J. at 386, 146 A.2d at 684-685.
 
 
 13
 We also hold that plaintiff has not substantiated her claim that the earlier settlements were intended to include compensation for Louis' own pain and suffering. First, it is clear from the releases there was no apportionment of the payments between a survivorship claim for Louis' own suffering and the wrongful death losses. Second, as the trial judge indicated, the original claims were for "wrongful death" and, as he said, under Florida law "there is to be no recovery for the decedent's pain and suffering prior to death." See Martin v. United Security Services, Inc., 314 So.2d 765 (Fla.1975).[5] Third, the Florida state court in the proceedings between Louis' parents allocated the settlement proceeds between them under the Florida Wrongful Death Act. Thus, plaintiff herself has treated the $200,000 as being compensation for Louis' death. In view of all these circumstances, we hold that the judge was correct in considering that the $200,000 was paid solely on the wrongful death claim.
 
 
 14
 We do, however, agree with plaintiff that the court erred in finding that defendants were entitled to a credit for that entire amount. Plaintiff's allegation that the two settlements were based on Florida law is not only unchalleged on this appeal, it is supported by defendants. As already noted, under Florida but not New Jersey law, damages could be recovered for Louis' parents' mental pain and suffering. The significance of this item is demonstrated by the parties' vigorous advocacy of their choice of law contentions. Thus, the result reached in the trial court has permitted defendants to obtain a credit against their possible obligation to pay for the pecuniary losses of Louis' next of kin for payments made by other persons for other damages. See N.J.Stat.Ann. Sec. 2A:31-5 (West Supp.1987). We do not see why they should be allowed this benefit as such a result is not required to preclude plaintiff from obtaining a double recovery. Further, allowance of the credit would preclude plaintiff from recovering the full measure of damages provided under New Jersey law if defendants' liability is established. Accordingly, we hold that defendants may not claim a credit for the $200,000 paid earlier, to the extent that payment compensated Louis' parents for their mental pain and suffering. Thus, we are obliged to reverse the order of dismissal and remand the matter to the trial court.
 
 
 15
 We recognize, of course, that the releases signed by plaintiff did not indicate the portion of the settlements allocated to this mental pain and suffering. Thus, further proceedings on the remand will be required to determine what credit should be given to any defendant held liable. Clearly, if the parties to the settlements made a division of the payments among the various items recoverable under Florida law, that apportionment, though not shown on the releases, should be honored here. In the absence of such an agreement, a reasonable apportionment should be made. Inasmuch as the parties have not briefed the issue of the procedure by which the apportionment should be made, we do not set it forth nor do we determine whether it should be made by a jury or the judge. If liability is established, these issues will be addressed on the remand.
 
 
 16
 The final issue on this appeal concerns plaintiff's claim that the judge erred in finding that the $200,000 fully compensated plaintiff and thus barred this action. Obviously our ruling that defendants are not entitled to a credit for this full amount undercuts the court's rationale on this point. But even if we agreed with the court that defendants were entitled to the $200,000 credit, we would not sustain the order of dismissal. We think it would be a rare case in which a claim for unliquidated damages could in advance of trial be deemed satisfied simply by reason of the quantum of a prior settlement. The mere fact that the parties agree that rarely would a verdict in excess of the amount of the settlements be returned, did not justify the court in denying plaintiff her opportunity for a trial. In fact, we find some indication that a $200,000 award might well be possible here. See Estate of Vafiades v. Sheppard Bus Company, 192 N.J.Super. 301, 309, 469 A.2d 971, 975 (App.Div.1983) ($150,000 settlement).
 
 
 17
 The order for dismissal dated November 3, 1986 will be reversed and the matter remanded to the trial court for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The allegations of the amended complaint are broad enough to include claims for Louis' inter vivos injuries but inasmuch as the action was brought by plaintiff only as administratrix ad prosequendum the case has been treated solely as a wrongful death action. See N.J.Stat.Ann. Sec. 2A.15-3 (West Supp.1987)
 
 
 [2]
 Colley, Pollock and Foster all involved survivorship and wrongful death actions following deaths of Pennsylvania residents as the result of accidents in New Jersey. The judges were primarily concerned with choice of law for the survivorship actions as damages for the wrongful death actions were identical in Pennsylvania and New Jersey but were greater under Pennsylvania law in a survivorship action
 
 
 [3]
 Under New Jersey law the original tortfeasor would be liable for the wrongful death even if attributable to subsequent malpractice. Knutsen v. Brown, 96 N.J.Super. 229, 235, 232 A.2d 833, 836 (App.Div.1967)
 
 
 [4]
 At the oral argument on plaintiff's motion to apply Florida law, defendants' representation that they were New Jersey residents went unchallenged. It still does
 
 
 [5]
 The Florida Wrongful Death Act merges survivorship claims into wrongful death claims when the injured party dies as a result of the injury caused by the tort. Fla.Stat.Ann. Sec. 768.20 (West 1986)