John E. BARTICHECK, David Carmel, Empire Emblem Co., Melvin Gittleman, Mark Gordon, Ellie Gordon, Dante Greco, Walter Hirschinger, Theodore Kahn, Muriel Kahn, Stanley Low, Peter Martin, Elissa Martin, Diane C. Natoli, Hobart Rauch, Howard M. Shiffman, Robert R. Schwartz, John J. Vas, Gary Wolkowitz, Sarah Wolkowitz, Al Atterman, Abraham Schlussel, and Morton Goetz, Plaintiffs,

v.

FIDELITY UNION BANK/FIRST NATIONAL STATE, a national banking association, Gary Flaker and Kevin Shanley, Defendants.

Civ. A. No. 86–201(AMW).

United States District Court,
D. New Jersey.

Feb. 22, 1988.

Michael B. Wallstein, Gelman & McNish, P.C., Hackensack, N.J., for plaintiffs.

Mark E. Segall, Myerson & Kuhn, New York City, for defendants.

### OPINION

WOLIN, District Judge.

Defendants' motion for summary judgment presents this court with the issue of whether a certain letter written by plaintiff, Ellie Gordon, to defendant bank constitutes a release as to the claims asserted by plaintiffs Gary and Sarah Wolkowitz and Mark and Ellie Gordon (collectively, the "Plaintiffs"), in their Second Amended Complaint dated as of November 17, 1986. The crux of defendants' motion is that Ellie Gordon acted as agent for the Plaintiffs

and thereby agreed for Plaintiffs to release any claims against the bank arising from certain investments in exchange for an extension of repayment of their outstanding debt to the bank.

### A. FACTS

Plaintiffs are two married couples and Ellie Gordon and Sarah Wolkowitz are sisters; they are also business associates. In 1980, Ellie Gordon was advised by stockbroker Herman Epstein that Plaintiffs ought to invest in an oil and gas limited partnership known as Continental IV.[1] In December, 1980, Plaintiffs went to Mr. Epstein's office where Mark Gordon and Gary Wolkowitz each invested $150,000 in Continental IV. Immediately thereafter, and in the company of Mr. Epstein, Plaintiffs traveled to a branch office of Garden State National Bank, a predecessor of defendant Fidelity Union Bank, for the purpose of securing loans to pay for their new investments.[2] While at the bank, Plaintiffs allege that they confirmed the bank's opinion of the investment by conversing with defendant, Gary Flaker, a Vice President of the bank.[3]

Approximately one year later, in October, 1981, Ellie Gordon and Sarah Wolkowitz each invested another $100,000 in Continental IV and each financed their investment through further loans from Fidelity Union Bank. In total, each couple borrowed $250,000 from the bank, and the last note signed by each couple, dated December 12, 1983, was for $240,000.

In 1984, Plaintiffs reduced their quarterly debt repayment obligation to the bank from $15,000 to $5,000 per couple for the following year. This agreement was embodied in a letter dated April 10, 1984 sent by Ellie Gordon to Steve Wahl, a former

---

1. Plaintiffs had previously invested, on Mr. Epstein's advice, in a similar venture known as Continental III.

2. Plaintiffs allege that they invested in Continental IV on Epstein's representation that the bank had opined favorably as to this venture.

3. Plaintiffs aver that Mr. Flaker opined favorably based on the bank's independent investiga-

tion. On the other hand, Mr. Flaker notes that his encounter with Plaintiffs lasted no more than ten minutes, during which time he rendered nothing more than superficial comments as to the nature of Continental IV. Moreover, the bank asserts that the loan was granted based on Plaintiffs' credit ratings and not merely on their participation in the venture.

account officer at the bank responsible for Plaintiffs' loans (the "Gordon Letter"). In substance, the letter provided:

> Dear Steve:
>
> Mr. Jaffe [Plaintiffs' attorney] has spoken to Council [sic] for the Bank and it appears to be agreed that the proposal to pay $5,000 a quarter on principle [sic] and interest in full for the year 1984 would be acceptable. We have enclosed such.
>
> Thereafter it would be subject to renegotiation. We agree to execute release of any claims concerning Continental IV to the bank and this arrangement will be kept confidential from any investors in Continental IV.
>
> I hope all is well with you.
>
> Sincerely,
>
> Ellie Gordon
>
> cc: Mr. Robert Jaffe

As noted in the letter, Plaintiffs remitted the reduced quarterly loan payment; they did so for a period of one year.

In 1986, both couples joined other Continental IV investors, all of whom purportedly borrowed from Fidelity Union, in an action against the bank and two of its officers.[4] Eventually, Plaintiffs filed the Second Amended Complaint which was dismissed by the District Court and subsequently reinstated by the Third Circuit. *See Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36 (3rd Cir.1987) (noting plaintiffs had properly alleged "pattern" under RICO statute). Essentially, the Second Amended Complaint alleged that defendants knew or should have known of the misrepresentations of the Continental IV organizers, and by granting loans in an allegedly irregular manner, the bank confirmed these same misrepresentations. Moreover, Plaintiffs assert that defendant Flaker also expressly confirmed several of these same alleged misrepresentations. In response to Plaintiffs' claims defendants assert that the "Gordon Letter" operates as a binding release which precludes the Gordons and the Wolkowitzes from bringing this action arising from their investments in Continental IV.

## B. ANALYSIS

As a threshold matter, "Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, when as in the instant case defendant has supplemented its summary judgment motion with affidavits, depositions and interrogatories, Plaintiffs' opposition, in order to survive defendant's motion, "must set forth specific facts showing that there is a genuine issue for trial. If [Plaintiffs do] not so respond, summary judgment, if appropriate, shall be entered against [them]." Fed. R.Civ.P. 56(c). In other words, this court may grant summary judgment only if, "as a matter of law, viewing all the evidence which has been tendered and which should be admitted in the light most favorable to the [nonmovant], no jury could decide in [the movant's] favor." *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 363 (3rd Cir. 1987) (citations omitted).

### 1. *Validity of the Release*

■ Because "the substantive law will identify which facts are material", *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510, this court notes that a release is a writing which manifests an intention to discharge another from an existing duty. *Model Plan Fin. Corp. v. Eagles*, 153 A. 530, 531, 107 N.J.L. 452, 454 (1931). A release may be executory in form, but in order to have

---

**4.** The individual defendants are Gary Flaker, a Vice President, who allegedly performed the duties of loan officer, and Kevin Shanley, the Vice–Chairman and then the Chief Executive Officer of the former Garden State National Bank, after its acquisition by Fidelity Union. It should be noted that defendant Shanley was added by Plaintiffs in the Second Amended Complaint.

legal effect it must be supported by adequate consideration. *United Counties Trust Co. v. Podvey*, 160 N.J.Super. 244, 252, 389 A.2d 515, 519 (1978) (citation omitted). *See also Grota v. La Boccetta*, 425 Pa. 620, 624, 230 A.2d 206, 208 (1967) (executory agreement to execute release upon receipt of payment is binding).

From the facts presented to this court, it is clear that the dimunition of quarterly payments from $15,000 to $5,000 for a period of one year as indicated by the Gordon Letter constitutes sufficient legal consideration to support the release because it appears to be "something that [was] bargained for in fact". *Borbely v. Nationwide Mutual Insurance Co.*, 547 F.Supp. 959, 980 (D.N.J.1981) (citing 1 *Corbin on Contracts*, § 131 (1963), *aff'd*, 692 F.2d 747 (3rd Cir.1982).[5] Instead, Plaintiffs argue that summary judgment is inappropriate in this case because the release was not fairly bargained for in that Ellie Gordon was fraudulently induced into writing the letter based on misrepresentations by defendant bank. *See* Opposition Affidavit of Ellie Gordon dated as of January 28, 1988 at ¶ 6 (noting that Mr. Wahl of bank, and not attorneys Jaffe and Schlesinger—as stated in Mrs. Gordon's deposition of May 14, 1987—told her to write letter to bank and dictated the relevant "release" language).[6] *See also Wojcik v. Pollock*, 97 N.J.Super. 319, 324, 235 A.2d 58 (Law Div.1967) (forms of release are binding unless showing of fraud, misrepresentation or overreaching by releasee); *Bilotti v. Accurate Forming Corp.*, 39 N.J. 184, 188 A.2d 24 (1963) (alleged fraud in consideration for release precludes grant of summary judgment).

Despite Plaintiffs' allegation of fraud and misrepresentation with respect to the release, this court will not consider Ellie Gordon's Opposition Affidavit; a party should not be allowed to create issues of fact by submissions of an "eleventh hour" affidavit which clearly contradicts her prior sworn testimony. *See Barwick v. Celotex Corp.*, 736 F.2d 946, 960–961 (4th Cir.1984) (noting that two conflicting versions of a plaintiff's testimony are not sufficient to create genuine issue of fact).[7] *See also Babrocky v. Jewel Food Co. & Retail Meatcutters Union*, 773 F.2d 857, 861 (7th Cir.1985) (summary judgment appropriate where plaintiff directly contradicts her own earlier statements without explaining the

---

**5.** There is no question that the Plaintiffs desired to obtain a reduction in the amount of their quarterly payments due to the bank. To that effect, they requested their attorney, Mr. Jaffe, to try and obtain such terms.

**6.** Plaintiffs also assert that the Opposition Affidavit of Robert Jaffe dated as of January 27, 1988 apparently corroborates Mrs. Gordon's statement that Mr. Wahl, and not he, must have suggested that the Gordon Letter include the "release" language. *But see infra* note 9 and accompanying text (noting that Jaffe Affidavit not conclusive support for Ellie Gordon Affidavit).

**7.** In the Deposition of Ellie Gordon on May 14, 1987 the following transpired:

Q. Mrs. Gordon, showing you what has been marked First Fidelity Exhibit 20, is this a copy of a letter that you sent to Mr. Wahl on or about April 10, 1984?
A. Yes.
Q. Reading the second paragraph where it says, 'We agree to execute release of any claims concerning Continental IV to the bank, and this arrangement will be kept confidential from any investors in Continental IV.'

Do you recall the circumstances that led to your putting that statement in this letter, Mrs. Gordon?
A. We had gotten involved with Jaffe and Schlesinger in an action against Continental Engergy [sic] Group. They then said that could help to negotiate the loan.
They called me and read this letter to me and said have it typed and signed and we will get you the above terms, following their advice.

Deposition at pp. 140–141. Subsequently, in her Opposition Affidavit, Ellie Gordon contradicts her above-quoted Deposition Statement and she asserts that she had been misled into preparing the letter in question. In pertinent part, Ellie Gordon asserts:

"I am aware that at the time of my deposition on May 14, 1987 I stated in response to a question from the Bank's attorney that it was Jaffe and Schlesinger who told me what to write in my letter to the Bank. This statement made by me was not accurate although I thought it was accurate at the time it was made. Upon further reflection I now recall that it definitely was Mr. Wahl who told me what to write in my April 10, 1984 letter to him."

Affidavit at ¶ 7.

contradiction or attempting to resolve the disparity). The only exception to this rule that "a party should not be allowed to create issues of credibility by contradicting his own earlier testimony[,]" *Babrocky*, 773 F.2d at 861, is the narrow situation in which "the affidavit explained certain aspects of the deposition by clarifying ambiguities created by confusing questioning of the defendant ... by referring in great detail to the relevant portions of the deposition." *Id.*, citing *Kennett–Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir.1980) (other citations omitted). As in *Babrocky*, the *Kennett–Murray* exception must here be distinguished because "in the case at bar the affidavit[ ] is devoid of such explanation [as to the contradiction]." 773 F.2d at 862.[8]

Even though this court will not consider Ellie Gordon's Opposition Affidavit, this court must still analyze the Opposition Affidavit of Plaintiffs' attorney Robert Jaffe, dated as of January 27, 1987 in light of the fact that:

> [If] the conflict at issue between a deposition and an affidavit [were] given by two separate individuals, then summary judgment would be inappropriate because the district court may not weigh conflicting evidence.

*Babrocky*, 773 F.2d at 861 (citations omitted).[9] Despite denying responsibility for actually suggesting the release language to Ellie Gordon, there is no suggestion in Mr. Jaffe's affidavit to support Mrs. Gordon's current allegation of fraud in the inducement to sign the release; rather, the Jaffe Affidavit merely raises the collateral issue of who actually originated the idea to include the release language in the Gordon Letter. Therefore, this court finds that Plaintiffs have not sufficiently supported their allegation of fraud and that the Gordon Letter constitutes a valid and binding release.

### 2. *Scope of the Release*

■ **(a) The Plaintiffs Claims.** Clearly the release applies to the claims of Ellie Gordon. She signed it. Defendants argue that the release also applies to the claims of plaintiffs Mark Gordon and Gary and Sarah Wolkowitz because each of them understood that Ellie Gordon and Mr. Jaffe were renegotiating the loans on behalf of all four borrowers.[10] In other words, defendants assert that Ellie Gordon had the apparent, if not the actual, authority of the three other Plaintiffs because they knowingly permitted Ellie Gordon to negotiate with the bank and they willingly gave her the free reign to reach agreement.[11] By analogy, defendants cite *United Counties Trust Company v. Podvey*, 160 N.J.Super. 244, 251, 389 A.2d 515, 519 (1978) in which the court held that a bank officer who was given free reign within the loan department of a bank, at a minimum, had the apparent authority to release co-obligors on a note to the bank.

Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably

---

**8.** Defendants further note that Ellie Gordon was specifically given the opportunity to correct the original transcript of her May 14 deposition by defendants' request dated as of June 16, 1987.

**9.** In pertinent part, this affidavit provides:
Attached to the affidavit of Mr. Wahl was a letter sent by Ellie Gordon making a statement to the effect that she agreed to execute release of any claims concerning Continental IV to the Bank. The statement was not placed in a letter at my suggestion but appears to have been something placed in the letter after a conversation between Ellie Gordon and Mr. Wahl. The letter certainly does not reflect or represent the role of your affiant in this matter which was solely to ask Mr. Wahl to effect an accommodation between the parties who were making the same allegations of securi-

ties fraud against promotors and professionals associated with Continental IV.
Jaffe Affidavit at ¶ 8.

**10.** Although signed only by Ellie Gordon, the letter clearly states that "We agree to execute release of any claims concerning Continental IV to the bank...." However, this court notes that without more, Ellie Gordon can not bind the other Plaintiffs. *See Wilzig v. Sisselman*, 209 N.J.Super. 25, 36, 506 A.2d 1238 (App.Div.1986), *certif. denied*, 107 N.J. 109, 526 A.2d 181 (1987) (apparent authority may not be based upon representations of agent) (citation omitted).

**11.** *See* Affidavit of Gary Wolkowitz at pp. 56–57; Affidavit of Sarah Wolkowitz at pp. 33–35 and Affidavit of Mark Gordon at pp. 74–76.

believe that the agent has authority despite the absence of any contractual agreement. *See Shadel v. Shell Oil Co.*, 195 N.J.Super. 311, 316, 478 A.2d 1262 (Law Div.1984) (quoting 3 Am.Jur.2d, Agency § 74 p. 477 (1962)) (noting that apparent authority arises from principal's statement, conduct or other manifestation of consent). And in *Wilzig v. Sisselman*, 209 N.J.Super. 25, 506 A.2d 1238 (App.Div.1986), *certif. denied*, 107 N.J. 109, 526 A.2d 181 (1987), the court noted that reliance is an essential element of apparent authority. Thus:

> "The factual question is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business uses, and the nature of the particular business, is justified in presuming that such agent has the authority to perform the particular act in question."

*Mesce v. Automobile Association of New Jersey*, 8 N.J.Super. 130, 135, 73 A.2d 586 (App.Div.1950).

■ For example, in *Sisselman, supra,* the court found that the doctrine of apparent authority was inapplicable because the third party received a letter from the principal explicitly advising him that no agency relationship existed. 209 N.J.Super. at 34, 73 A.2d 586. On the other hand, in this case, Plaintiffs clearly assented to the representation of Ellie Gordon and her lawyer, Mr. Jaffe, for purposes of renegotiation of the loan. Although Plaintiffs issued no statement to this effect, their conduct clearly indicates that Ellie Gordon had the authority to release the bank during the process of debt negotiation; [12] to wit, Plaintiffs admit that they knowingly permitted Ellie Gordon to negotiate with the bank on their behalf, they admit that they gave her free reign to reach agreement on their behalf without prior or subsequent approval and upon settlement they readily availed themselves of the debt repayment terms of the release. In short, the undisputed facts clearly indicate that Plaintiffs voluntarily placed Ellie Gordon in the position as their agent such that the bank may have reasonably relied upon this representation in agreeing to the debt repayment restructure for Plaintiffs' Continental IV loans in exchange for Plaintiffs' release of their claims thereto.[13]

■ **(b) The Defendants.** The bank may clearly avail itself of the release because it is explicitly referred to in the Gordon Letter.[14] Defendants also argue that this release extends to defendants Gary Flaker and Kevin Shanley because they are employees of the bank and it was their actions which gave rise to the claims from which the bank has been released. However, in New Jersey it is clear that a "release of one joint tortfeasor does not release other joint tortfeasors unless it is so intended or the consideration constitutes full compensation or is accepted as such." *Daily v. Somberg*, 28 N.J. 372, 383, 146 A.2d 676 (1958). Although *Daily* is a case which specifically addresses the release of a *successive* tortfeasor, it cites with approval the case of *Breen v. Peck*, 28 N.J. 351, 146 A.2d 665 (1958), in which the New Jersey Supreme Court explicitly abrogated the old common law rule that the release of one joint tortfeasor automatically released the other joint tortfeasors. In this motion, defendants Shanley and Flaker bear the burden of proving either that Plaintiffs intended to release them or that the release agreement with the bank constitutes full compensation. *See Daily, supra,* 28 N.J.

---

**12.** Although not a basis of this court's holding, the bank was apparently aware of the professional and familial interrelation amongst the Plaintiffs.

**13.** Moreover, inasmuch as Plaintiffs availed themselves of the debt-abatement repayment agreement without inquiring fully as to its terms and conditions, such action constitutes ratification of that agreement. *See Currie v. Land Title Bank & Trust Co.*, 333 Pa. 310, 5 A.2d 168, 170 (1939) ("principal can ... ratify the unauthorized act of his agent without full knowledge of all material facts connected with it if he intentionally and deliberately does so, knowing that he does not possess such knowledge and does not care to make further inquiry into the matter[ ]"). (citations omitted).

**14.** The release states: "We agree to execute release of any claims concerning Continental IV to the bank."

at 385, 146 A.2d 676 (proponent of release bears burden of proof). Thus, this court concludes, as did the *Daily* court, that "those issues of intent and full compensation are factual in nature and could not properly be determined by the trial court on the showing made in the defendants' motion for summary judgment. *Id.* at 384, 146 A.2d 676, citing *Breen v. Peck, supra.*

■ **3. Sanctions.** Rule 56(g) of the Federal Rules of Civil Procedure provides:

> **Affidavits Made in Bad Faith.** Should it appear to the satisfication of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable attorneys' fees, and any offending party or attorney may be adjudged guilty of contempt.

In light of the presentation of Ellie Gordon's inexplicably contradictory affidavit which is at odds with her previous deposition testimony, this court finds that she "is guilty of the conduct Rule 56(g), Fed.R.Civ. P. is designed to deter—an effort to mislead the Court and to delay the proceedings." *Acrotube, Inc. v. J.K. Financial Group, Inc.,* 653 F.Supp. 470, 478 (N.D.Ga. 1987). Accordingly, plaintiff Ellie Gordon must pay defendants' reasonable attorneys' expenses in responding to her questionable affidavit in its Reply Brief.

### C. CONCLUSION

Defendant, Fidelity Union Bank's summary judgment motion with respect to the release from the claims of plaintiffs Mark and Ellie Gordon and Gary and Sara Wolkowitz with respect to the Continental IV investments is GRANTED. Defendants Gary Flaker and Kevin Shanley's summary judgment motion with respect to the same release is DENIED as to all aforementioned plaintiffs. Furthermore, defendants are ordered to submit to the court within one week from entry of this opinion a record of its costs, which are to be reimbursed by plaintiff Ellie Gordon, expended in response to the Gordon affidavit. Plaintiffs shall be allowed one week thereafter in which to respond to defendants' submission.

An Order in conformity with this Opinion is to be submitted by plaintiffs.