**FORT HILL BUILDERS, INC.,**
**Plaintiff, Appellee,**

v.

**NATIONAL GRANGE MUTUAL INSUR-ANCE CO., Defendant, Appellee.**

**Carl L. Dworman, et al.,**
**Defendants, Appellants.**

**No. 88–1522.**

United States Court of Appeals,
First Circuit.

Submitted Oct. 7, 1988.

Decided Jan. 25, 1989.

Rehearing and Rehearing En Banc
Denied March 21, 1989.

Carl L. Dworman and Ralph M. Dworman, on brief, pro se.

Girard R. Visconti, Mark J. Hagopian and Visconti & Petrocelli, Ltd., Providence, R.I., on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BREYER and TORRUELLA, Circuit Judges.

PER CURIAM.

Defendants appeal from a judgment confirming an arbitration award over defendants' objections that one of the arbitrators demonstrated "evident partiality" within the meaning of 9 U.S.C. § 10(b). We review the background.

A three member arbitration panel rendered a $1,124,105.00 award for plaintiff, a builder, against Dworman Associates. Defendants Carl and Ralph Dworman were the general partners of Dworman Associates. Alleging diversity jurisdiction, plaintiff brought an action seeking confirmation of the award pursuant to 9 U.S.C. §§ 9, 13 and R.I.Gen.Laws §§ 10-3-11, 10-3-16. Defendants counterclaimed seeking to vacate the award. Plaintiff moved for summary judgment. Defendants opposed, filing an affidavit from the attorney who had represented defendants during the arbitration proceedings. The attorney stated that "[f]rom the outset of the hearings," arbitrator Nicholson had "made it quite clear that he was not impartial." Nicholson's comments on and off the record had shown "he had very strong negative feelings about [defendants], who were the owners and developers of the project, and very strong feeling of sympathy or empathy for [plaintiff]." Nicholson had "continually" interjected with comments when witnesses were testifying, particularly if the testimony was helpful to defendants. The comments "would be critical or argumentative about the testimony." The lawyer continued as follows:

5. I do not mean to suggest in any way that Mr. Nicholson was corrupt or was conscientiously and purposefully doing something which he believed was improper. Rather, I believe that Mr. Nicholson's feelings of identification with his fellow builder, [plaintiff], became so overwhelming that he was unrestrained in advocating [plaintiff's] position to the other arbitrators throughout the proceedings.

6. Mr. Nicholson's feelings were so strong and his comments to the other arbitrators were so frequent, that it is

inconceivable that the arbitrators' opinions about the case were not influenced by Mr. Nicholson. His unquestionable lack of impartiality had to have had some impact on the potential impartiality of the other arbitrators.

The Dwormans also filed affidavits stating that they had attended the arbitration proceedings and that Nicholson had been hostile from the outset. When defendants presented their case, Nicholson "adopted an air of blatant indifference, frequently closing his eyes, appearing to be asleep, and just generally ignoring the proceedings. When he did (infrequently) speak, his comments were most often direct criticisms of [defendants'] position, or indications that he had already made up his mind how he would rule, regardless of [defendants'] testimony," defendants said. Defendants did not point to any specific remarks or file a copy of the transcript of the arbitration proceedings.

In response to defendants' claims, the attorney representing a municipality at the arbitration proceedings stated that at no time during the proceedings had defendants or their attorney complained of partiality[1] on the part of any arbitrator.

Pointing out that it was undisputed that defendants had been present at the arbitration proceedings but that there was no indication defendants had "raised or even hinted at the notion of partiality until an award was made in favor of plaintiff," a magistrate recommended that plaintiff's motion for summary judgment be granted. The district court agreed with the magistrate and added post-arbitration award, pre-judgment interest at the rate set by 28 U.S.C. § 1961(a). The court also concluded that sanctions should be awarded pursuant to Fed.R.Civ.P. 56(g) and assessed $5,996.25 in attorney's fees. *Fort Hill Builders, Inc. v. National Grange Mutual Insurance Company*, 682 F.Supp. 145 (D.R.I.1988). Defendants have appealed contending 1) that material issues regarding partiality were presented for trial, 2) that under Rhode Island law defendants are not liable for pre-judgment interest, and 3) that attorney's fees should not have been imposed under Fed.R.Civ.P. 56(g).

### 1. *Evident partiality.*

■ We agree with the magistrate and district court that there was no genuine issue of material fact precluding confirmation of the award. First, as we said in *Early v. Eastern Transfer*, 699 F.2d 552, 588 (1st Cir.), *cert. denied*, 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983), absent exceptional circumstances, we will not entertain a claim of personal bias where it could have been raised at the arbitration proceedings but was not. The conduct about which defendants complain—Nicholson's alleged interruptions and interjections of comments or explanations favorable to plaintiff or hostile to defendants to the point where defendants' lawyer felt he was facing as an adversary not only plaintiff's lawyer but also arbitrator Nicholson—was the very type of conduct that defendants could have objected to at the arbitration hearings. If Nicholson's interjections were unduly disruptive of counsel's presentation or cross-examination, counsel could have pointed out the problem to him. Especially in view of counsel's opinion that Nicholson was not corrupt or purposefully behaving improperly, an objection—if warranted—well may have alleviated the problem.

Defendants argue on appeal that the extent of Nicholson's bias was not apparent until the award was actually rendered and turned out to be—defendants say—several hundred thousand dollars more than plaintiff had originally sought. Apparently defendants' point is that an arbitrator who awards more than what a party requests must be biased. Defendants did not raise this matter in their affidavits below, they only briefly averted to it in conclusory sentences in argument before the district court, and hence we will not consider it on appeal. Nor have defendants indicated whether plaintiff amended the amount sought or whether the alleged excess may be due to pre-arbitration award interest

---

1. The attorney's affidavit states defendants did not complain of any arbitrator's "impartiality, etc." It is clear that the affidavit meant "partiality" rather than "impartiality."

accruing over the course of the lengthy arbitration proceedings.

Second, and apart from defendants' failure to object, defendants' conclusory allegations as to Nicholson's interruptions, comments, manifestations of opinion, and "evident partiality" were insufficient to create any genuine issue of material fact. *See Sidarma Societa Italiana di Armanento Spa v. Holt Marine Industries, Inc.,* 515 F.Supp. 1302, 1306–07 (S.D.N.Y.), *aff'd.,* 681 F.2d 802 (2d Cir.1981) (arbitrator's consideration of the effect a decision in a particular dispute will have on the industry in general does not rise to the level of evident partiality even though it is likely that any given arbitrator's view of what is good for the industry will be colored by his personal business experience); *Fairchild & Co. v. Richmond, Fredericksburg & Potomac R.R. Co.,* 516 F.Supp. 1305, 1313 (D.D.C.1981) (during the course of a hearing it is to be expected that an arbitrator may develop an opinion and perhaps even express it); *Graphic Arts International Union, Local 97–B v. Haddon Craftsmen, Inc.,* 489 F.Supp. 1088, 1093–94 (M.D.Pa.1979) (evident partiality not established where, although arbitrator's conduct suggested he was unimpressed with union's case, there was no indication arbitrator prevented the presentation of evidence or arguments). Furthermore, the panel decision was unanimous for plaintiff, and defendants alleged no wrongdoing on the part of the other two members. To be sure, defendants' counsel claimed that Nicholson's comments were so strong and frequent that they must have influenced the other arbitrators. There was no contention, however, that counsel lacked an opportunity to oppose or correct Nicholson's statements or to argue his own views. That the other panel members were ultimately persuaded by Nicholson's reasoning rather than counsel's does not constitute bias.

## 2. *Interest.*

■ Defendants argue that state law determines whether post-award, pre-judgment interest shall be awarded in this diversity action and that *Paola v. Commercial Union Assurance Companies,* 461 A.2d 935 (R.I.1983) forecloses any such interest award. The district court disagreed, concluding that under either state or federal law plaintiff was entitled to interest from the date of the arbitrators' award. As to the rate at which interest should be computed, the district court reasoned that as plaintiff had invoked a federal forum, the federal rate should apply. Because the court did not regard post-award interest to be, strictly speaking, pre-judgment interest, but rather apparently saw it as closer to post-judgment interest, the court chose to apply the rate specified in 28 U.S.C. § 1961(a),[2] a statute providing for post-judgment interest.

■ Courts are not entirely in accord on the question of whether federal or state law governs entitlement to, and the rate of, post-award, pre-judgment interest. In *Sunship, Inc. v. Matson Navigation Company,* 785 F.2d 59 (3d Cir.1986), the Third Circuit implied that in a diversity action federal law would govern both entitlement to and the rate of post-arbitration award, pre-confirmation judgment interest. The Ninth Circuit, however, criticized *Sunship* in *Northrop Corp. v. Triad International Marketing S.A.,* 842 F.2d 1154, 1155 (9th Cir.1988) and concluded that state law determined the rate of post-award, pre-judgment interest in a diversity action enforcing an arbitration award under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* We need not resolve this question because, with respect to entitlement, we agree with the district court that, under either federal or state law, interest should be awarded from the date of the arbitration decision. As for the rate of pre-judgment interest,

**2.** 28 U.S.C. § 1961(a) provides in material part as follows:

Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment....

the 6.5 percent federal rate reflected in the judgment is more favorable to defendants (the appealing parties) than is the 12 percent state rate. *See* R.I.Gen.Laws § 9–21–10. Hence, defendants have not specifically attacked the rate, and we need not decide it. (Nor did plaintiff file a cross-appeal or challenge the interest rate.) Therefore, we turn to the one argument defendants have made, which is that state law precludes the award of any post-arbitration award, pre-confirmation judgment interest.

We agree with the district court that state law, as set forth in *Paola v. Commercial Union Assurance Companies,* 461 A.2d 935 (R.I.1983), does not preclude an award of interest from the date of the arbitration decision. To be sure, the court in *Paola* said that a Superior Court justice "may not award interest at the time he confirms an award pursuant to § 9–21–10." *Id.,* at 937. In context, however, it is apparent from the reasons the court stated for limiting the Superior Court's authority to add interest that the quoted blanket statement is much narrower than it at first glance seems to be and applies not to *post*-arbitration award interest but only to *pre*-arbitration award interest.

In *Paola,* the plaintiff asked a Superior Court confirming an arbitration award to add "pre-judgment" interest pursuant to § 9–21–10, a statute providing for interest "from the date the cause of action accrued." Plaintiff tried to apply § 9–21–10—a statute directed to proceedings instituted in a *court*—to proceedings before an *arbitrator,* thereby seeking from a court, as a matter of law, interest back to some unspecified accrual date *prior* to the arbitrator's award. Pointing out that it was impossible to tell from the lump sum arbitration award whether pre-award interest in fact had already been added by the arbitrator and referring to the very limited authority the Superior Court had to modify an arbitration award, the Rhode Island Supreme Court ruled that it was the arbitrator's province—not the court's—to include interest in his award.

· The entire thrust of the court's opinion was addressed to pre-arbitration award interest; it did not deal with post-arbitration award interest. Indeed, the court stated that absent agreement of the parties to the contrary, the arbitrator ordinarily should add pre-judgment interest to his award. In view of the court's feeling that the party prevailing in arbitration should be compensated by interest for the delay between when the party should have been compensated and when the arbitration award is rendered, it would be illogical to conclude that the Supreme Court of Rhode Island would deny interest for the period after an arbitration award is rendered. Rather, such post-arbitration award, pre-confirmation judgment interest would seem within the general purview of § 9–21–10.

### 3. *Rule 56(g) sanctions.*

■ After the magistrate recommended that the arbitration award be confirmed, plaintiff moved for costs and attorney's fees pursuant to Fed.R.Civ.P. 56(g).

Rule 56(g) provides as follows:

(g). Affidavits Made in Bad Faith. Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

The district court granted plaintiff's motion and awarded attorney's fees. The court did not expressly find that defendants' affidavits were submitted in bad faith, but did apparently conclude they were filed solely for delay. The court felt that in view of defendants' failure to assert prejudice at the arbitration proceeding, *Early v. Eastern Transfer,* 699 F.2d at 558, where this court reiterated "the accepted rule in arbitration cases" that, absent exceptional circumstances, a court will not entertain a claim of personal bias

**16**

where it could have been—but was not—raised at the arbitration hearing, was controlling and therefore defendants had no justification for opposing either the arbitrators' award or plaintiff's motion for summary judgment.

Defendants argue that Rule 56(g) sanctions are inappropriate as there was no finding that the affidavits themselves were false. Rather, the affidavits accurately set forth the perceptions of defendants and their attorney. That those perceptions were insufficient to create an issue for trial is no reason for awarding Rule 56(g) sanctions, defendants maintain.

There is little case law applying Rule 56(g). The rare instances in which Rule 56(g) sanctions have been imposed, the conduct has been particularly egregious. *See, e.g., Alart Associates, Inc. v. Aptaker,* 402 F.2d 779 (2d Cir.1968) (reasserting substantially the same grounds for summary judgment after the court had already twice rejected the theory); *Barticheck v. Fidelity Union Bank/First National State,* 680 F.Supp. 144 (D.N.J.1988) (eleventh hour attempt to create material issue of fact by contradicting prior sworn testimony); *Acrotube, Inc. v. J.K. Financial Group, Inc.,* 653 F.Supp. 470, 478 (N.D.Ga.1987) (affidavit flatly at odds with facts indisputably within affiant's knowledge). No such comparable conduct is involved here, and we conclude that Rule 56 sanctions should not have been imposed. Defendants' position below was not entirely unwarranted. Their objection to post-arbitration award, pre-judgment interest based on the *Paola* case was not frivolous and cannot be said to have been made in objective bad faith. As for the bias claim, while it was weak, we do not think that the *Early* case was so obviously controlling that the defendants should be answerable in attorney's fees under Rule 56(g) for failing to concede its applicability.[3]

In sum, the judgment confirming the arbitration decision and awarding interest from the date of the arbitration decision is affirmed. The award of attorney's fees is reversed. Appellee's request for costs and attorney's fees pursuant to Fed.R.App.P. 38 is denied.

---

**3.** The district court did not purport to act pursuant to Fed.R.Civ.P. 11, and plaintiff has not argued that the attorney's fees award should be upheld on that basis. Hence, we express no opinion whether sanctions would have been appropriate under Rule 11. *See Stewart v. RCA Corp.,* 790 F.2d 624, 632–33 (7th Cir.1986) (upholding denial of rule 56(g) sanctions and declining to consider whether Rule 11 sanctions would have been appropriate where Rule 11 had not been invoked below).