**Elouise Pepion COBELL, et al., Plaintiffs,**

v.

**Gale A. NORTON, Secretary of the Interior, et al., Defendants.**

**No. CIV.A.96–1285 (RCL).**

United States District Court, District of Columbia.

March 11, 2003.

---

Keith M. Harper, Washington, DC, Dennis Marc Gingold, Mark Kester Brown, Washington, DC, Elliott H. Levitas, Kilpatrick Stockton, LLP, Washington, DC, for plaintiffs.

Robert D. Luskin, Patton Boggs, L.L.P., Washington, DC, Tom C. Clark, U.S. Dept. of Justice, Land & Nat. Resources Div., Washington, DC, Brian L. Ferrell, Andrew M. Eschen, U.S. Dept. of Justice, Washington, DC, Charles Walter Findlay, III, Sarah D. Himmelhoch, Washington, DC, Sandra Marguerite Schraibman, U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Edith R. Blackwell, Washington, DC, John Charles Cruden, U.S. Dept. of Justice, Environment & Natural Resources Div., Annandale, VA, for Bruce Babbitt, defendant.

Charles Walter Findlay, III, Washington, DC, John Charles Cruden, U.S. Dept. of Justice, Environment & Nat. Resources Div., Annandale, VA, for Lawrence Summers, defendant.

Mark E. Nagle, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Attorney's Office, Washington, DC, J. Christopher Kohn, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, John Most, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, Brian L. Ferrell, U.S. Dept. of Justice, Washington, DC, Charles Walter Findlay, III, Washington, DC, Jo-Ann Shyloski, Barry Weiner, Washington, DC, Terry M. Petrie, U.S. Dept. of Justice, Denver, CO, Seth Brandon Shapiro, John Stemplewicz, U.S. Dept. of Justice, Civ. Div., Washington, DC, Sandra Peavler Spooner, Peter Blaze Miller, Cynthia L. Alexander, Amalia D. Kessler, Mathew J. Fader, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, John Charles Cruden, U.S. Dept. of Justice, Environment & Natural Resources Div., Annandale, VA, for Kevin Gover, Dept. of Interior, defendants.

Mark E. Nagle, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Attorney's Office, Washington, DC, J. Christopher Kohn, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, John Most, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, Charles Walter Findlay, III, Washington, DC, Jo-Ann Shyloski, Barry Weiner, Washington, DC, Terry M. Petrie, U.S. Dept. of Justice, Denver, CO, Seth Brandon Shapiro, John Stemplewicz, U.S. Dept. of Justice, Civ. Div., Washington, DC, Herbert Lawrence Fenster, McKenna & Cuneo, LLP, Washington, DC, Sandra Peavler Spooner, Peter Blaze Miller, Cynthia L. Alexander, Amalia D. Kessler, Mathew J. Fader, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, John Charles Cruden, U.S. Dept. of Justice, Environment & Natural Resources Div., Annandale, VA, for Gale Norton, defendant.

Robert D. Luskin, Patton Boggs, L.L.P., Washington, DC, Seth Brandon Shapiro, U.S. Dept. of Justice, Civ. Div., Washington, DC, Peter Blaze, Miller, Cynthia L. Alexander, Amalia D. Kessler, Mathew J. Fader, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, for John D. Leshy, Edward B. Cohen, defendants.

Elizabeth Wallace Fleming, Preston, Gates, Ellis & Rouvelas Meeds, Washington, DC, Seth Brandon Shapiro, U.S. Dept. of Justice, Civ. Div., Washington, DC, Peter Blaze Miller, Cynthia L. Alexander, Amalia D. Kessler, Mathew J. Fader, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, John Charles Cruden, U.S. Dept. of Justice, Environment & Natural Resources Div., Annandale, VA, for Michael G. Rossetti, defendant.

B. Michael Rauh, Manatt, Phelps & Phillips, L.L.P., Washington, DC, for Neal McCaleb, defendant. Lawrence H. Wechsler, Janis, Schuelke & Wexhsler, Washington, DC, for Eleni M. Constantine, non party. Donald Michael Barnes, Seyfarth Shaw, Washington, DC, for Roberta McInerney, non party.

David Booth Beers, Shea & Gardner, Washington, DC, for James Regan, non party.

William Aaron Dobrovir, Warrenton, VA, for Daniel Mazella, non party.

Pamela J. Marple, Mannatt, Phelps & Phillips, Washington, DC, for Randall Lewis, non party.

Timothy Patrick Garren, U.S. Dept. of Justice, Washington, for U.S., non party.

Brian L. Ferrell, U.S. Dept. of Justice, Washington, DC, for Dept. of Treasury, non party.

Erik Lloyd Kitchen, Steptoe & Johnson, L.L.P., Washington, DC, for Ingrid D. Falanga, non party.

Martha Purcell Rogers, Ober, Kaler, Grimes & Shriver, Washington, DC, for Timothy S. Elliott, non party.

Michael R. Bromwich, Fried, Frank, Harris, Shriver & Jacobson, Washington, Amy Berman Jackson, Trout & Richards, P.L.L.C., Washington, DC, for Edith R. Blackwell, non party.

Roger Eric Zuckerman, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, L.L.P., Washington, DC, for Robert Lamb, non party.

Kathleen Elizabeth Voelker, Washington, DC, for James Douglas, non party.

Stephen M. Byers, Crowell & Moring, L.L.P., Washington, DC, for Dominic Nessi, non party.

Michael R. Bromwich, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for M. Sharon Blackwell, non party.

Leslie B. Kiernan, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, L.L.P., Washington, DC, for Hilda Manuel, non party.

L. Barrett Boss, Asbill, Junkin, Moffitt & Boss, Chartered, Washington, DC, for Steven Swanson, non party.

Plato Cacheris, Sydney Jean Hoffman, John Francis Hundley, law Offices of Plato Cacheris, Washington, DC, for John Berr, Glenn Schumaker, non parties.

Barbara Ann Van Gelder, Wiley, Rein & Fielding, Washington, DC, for James A. Eichner, non party.

William Holt Briggs, Jr., Ross, Dixon & Bell, L.L.P., Washington, DC, for Phillip A. Brooks, non party.

Thomas Edward Wilson, Berliner, Corcoran & Rowe, L.L.P., Washington, DC, for John S. Most, non party.

Mary Lou Soller, Miller & Chevalier, Chartered, Washington, DC, for Chester Mills, Terrance Virden, non parties.

Jeffrey David Robinson, Melissa Heitman McNiven, Baach, Robinson & Lewis, Washington, DC, Lois J. Schiffer, non party.

Dwight Phillip Bostwick, Comey, Boyd & Luskin, PC, Washington, DC, Melissa Heitman McNiven, Baach, Robinson & Lewis, Washington, DC, for Anne Shields, non party.

Larry Allen Nathans, Bennett & Nathans, L.L.P., Baltimore, MD, for David Shuey, non party.

John Kenneth Zwerling, Zwerling & Kemler, P.C., Alexandria, VA, for Terry Steele, non party.

Lisa Bondareff Kemler, Zwerling & Kemler, P.C., Alexandria, VA, for Deborah Maddox, non party.

Russell David Duncan, Lisa Ann Freiman Fishberg, Coburn & Schertler, Washington, DC, for John A. Bryson, David Shilton, non parties.

E. Lawrence Barcella, Jr., Paul, Hastings, Janofsky & Walker, L.L.P., Washington, DC, for Williams G. Myers, III, non party.

David Sidney Krakoff, Alessio D. Evangelista, Beveridge & Diamond, P.C., Washington, DC, for Daryl W. White, non party.

Michael D. Goodstein, Resolution Law Group, PC, Washington, DC, for Tom C. Clark, II, non party.

Bradley Stuart Lui, Morrison & Foerster, LLP, McLean, VA, for Sabrina McCarthy, non party.

Stanley M. Brand, Andrew Dewald Herman, Brand & Frulla, P.C., Washington, DC, for Peter D. Coppelman, non party.

Marshall L. Matz, Olsson, Frank & Weeda, P.C., Washington, DC, Jefferson McClure Gray, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for Kenneth Paquin, Kenneth Russel, non parties.

Alan Lee Balaran, Washington, DC, pro se.

Jonathan K. Tycko, Gibson, Dunn & Crutcher, L.L.P., Washington, DC, Richard Lee Cys, Davis Wright Tremaine, Washington, DC, for Dow Jones & Co., Inc., movant.

Christopher B. Mead, London & Mead, Washington, DC, for Kenneth F. Rossman, movant.

Albert Lee Bynum, pro se.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on plaintiffs' motion for sanctions and a contempt finding pursuant to Rule 56(g) [1129–1], which was filed on February 15, 2002. Also before the Court is plaintiffs' consolidated motion for leave to amend the motion for sanctions [1326–1] and motion to amend [1326–2], which were filed on June 4, 2002. Upon consideration of plaintiffs' motions, defendants' opposition briefs thereto, plaintiffs' reply briefs, and the applicable law in this case, the Court finds that plaintiffs' motion for sanctions should be granted in part and denied in part, and that plaintiffs' motions for leave to amend and to amend should be denied.

## I. BACKGROUND

On August 27, 1999, Gene L. Dodaro, principal assistant to the Comptroller General, sent a letter to John Berry, Assistant Interior Secretary—Policy Management and Budget (the "GAO Letter"). Dodaro noted that he was responding to Berry's letter of June 18, 1999 seeking the assistance of the General Accounting Office in evaluating a series of records that Berry believed "may contain Indian accounting records subject to disclosure in the *Cobell* litigation," specifically requesting any "historical information about the nature of any accounting regarding individual Indian accounts that was undertaken by GAO in the past, including the standards and procedures that GAO may have employed." GAO Letter at 1. In response, Dodaro explained that

no one currently employed at GAO participated in audits of the IIM accounts, which took place at various times from the 1920's through the 1950's. Given the number of years that have passed, we have no direct knowledge about the nature of any accounting regarding individual Indian accounts previously undertaken by GAO, or the standards or procedures used.

*Id.* Dodaro continued:

Over the past several weeks, GAO staff have had numerous telephone conversations with members of your staff and attorneys from the Justice Department, as well as a meeting with Treasury officials, to answer questions and share information. In response to questions, we have explained that our records do not establish that GAO conducted a "final" GAO comprehensive audit of IIM accounts, nor do

they establish any regular practice of auditing IIM accounts.

*Id.* at 2. The letter contains the following handwritten notation on its first page: "Dee—p/s copies to all Cobell Team at DOI, BL et al. JB."[1]

On September 19, 2000, defendants filed their third Phase II motion for partial summary judgment, relating to alleged settlement of accounts by the Treasury Department and General Accounting Office ("Third Motion"). Defendants stated:

> Between 1817 and 1951, the Defendants were subject to and complied with several statutes that required the routine audit of all credits and disbursements of Indian disbursing agents who handled individual Indian monies. Because Defendants complied with the statutes defining their accounting obligations for the period 1817 to 1951, Plaintiffs are not now entitled to an accounting or reconciliation that requires the Defendants and this Court to revisit transactions settled in accordance with law. For these reasons and for the reasons set forth in the accompanying Memorandum, the Defendants move for summary judgment that neither the American Indian Trust Fund Management Reform Act of 1994 nor any other law requires Defendants to account today for transactions that occurred in individual Indian money accounts prior to 1951.

Third Motion at 1. Defendants' accompanying memorandum clarified the specific basis for these claims, arguing that

> between 1817 and 1951, governing law required each disbursing agent to submit his accounts, including those relating to IIM accounts, for settlement. Settlement consisted of a double audit—one by the Indian Office in Washington D.C. and then by a second agency (the Department of the Treasury ("Treasury") until 1921 and the General Accounting Office ("GAO") between 1921 and 1951). This settlement process provided a regular and specific procedure for checking the accuracy of accounts maintained on behalf of individual

Indians and was the only accounting or reconciliation required by law at the time.

Mem. in Support of Third Motion at 1–2 (footnote omitted). In support of their motion for partial summary judgment, defendants submitted an affidavit from Frank Sapienza, director of the Indian Trust Accounting Division of the General Services Administration ("the Sapienza Affidavit"), which defendants included as Exhibit 7 to the Third Motion. In the third paragraph of the affidavit, Sapienza summarizes his conclusions:

> In general, I determined that ... (3) from 1921 to 1951, three government agencies—the Indian Office (now the Bureau of Indian Affairs or BIA), the Treasury Department, and the GAO—each dealt separately with IIM accounts. All three agencies had separate accounting controls in place for ensuring that IIM accounts were properly processed and the balances were accurately stated. The Indian Office and the Treasury Department used internal control procedures to ensure the accuracy of the transactions they processed. The GAO later audited those same transactions to prove their accuracy and validity, and any exceptions were promptly resolved.

Sapienza Aff. ¶ 3. Based on the representations made in the Sapienza Affidavit and the memorandum accompanying the Third Motion, defendants moved for partial summary judgment, on the grounds that they were not required to submit an accounting that revisited any transactions that were subject to this "double auditing" process. Mem. in Support of Third Motion at 2. Plaintiffs filed a brief opposing the Third Motion on November 3, 2000. Part IV of the opposition brief and 41 pages of the evidentiary appendix submitted in conjunction with the opposition brief dealt exclusively with the claims asserted in the Sapienza Affidavit.

On February 1, 2002, defendants sought leave of the Court to withdraw the Third Motion from the record in this case. At the same time that they filed their opposition brief, plaintiffs moved for sanctions and a

---

1. Additionally, during the recent contempt trial in the present case, Robert Lamb, Deputy Assistant Interior Secretary for Budget and Finance, testified that the GAO Letter had been sent to the Cobell litigation team. Contempt II Trial, Jan. 14, 2002, at 2955.

contempt finding under Rule 56(g) of the Federal Rules of Civil Procedure, asserting that defendants had submitted an affidavit in bad faith in connection with the Third Motion. On March 11, 2002, the Court ordered the Third Motion to be withdrawn from the record. On June 5, 2002, plaintiffs moved to amend their motion for sanctions to add additional respondents.

## II.  ANALYSIS

A.  Plaintiffs' Motion for Rule 56(g) Sanctions

Rule 56(g) of the Federal Rules of Civil Procedure provides:

> Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule [governing motions for summary judgment] are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

The basis of plaintiffs' motion for sanctions and a finding of contempt is that defendants misrepresented the nature of the accountings conducted by the General Accounting Office between 1921–51 by filing a materially misleading affidavit in conjunction with the Third Motion. Section II.E of the Third Motion was entitled "In 1921, Congress Created GAO and Assigned to GAO the Accounting duties for, *inter alia*, Individual Indian Monies." *Id.* at 14. In this section, defendants explained that

> [p]ursuant to the Budget and Accounting Act of 1921, disbursing agents would prepare their accounts in accordance with the regulations of Interior and submit those accounts to GAO. The accounts were audited for "compliance with the laws, regulations and decisions governing the expendi-

ture of Indian moneys." The accountings embraced "both collections and disbursements for the account of the individual Indian."

*Id.* at 15–16.[2]

The next paragraph asserted that "Indian agents' accounts were settled in this manner on a routine basis through 1950. Interior's regulations specifically addressed the settlement of accounts and required that receipts and disbursements of individual Indian monies be subject to the settlement procedure." *Id.* at 16. Defendants' primary authority for this assertion was paragraphs 45 and 52 of the Sapienza Affidavit. Paragraph 52 of that affidavit states:

> In sum, between 1921 and 1950, three government agencies—the Indian Office (now the BIA), the Treasury Department, and the GAO—each dealt separately with accounts. All three agencies had separate accounting controls in place for ensuring that accounts were properly processed and the balances were accurately stated. The Indian Office and the Treasury Department used internal control procedures to ensure the accuracy of the transactions they processed. The GAO later audited those same transactions to prove their accuracy and validity, and any exceptions were promptly resolved.

Sapienza Aff. ¶ 52.

Defendants also stated that although not all of the settled accounts are extant, "there are strong indications that the missing accounts were actually settled in accordance with the requirements of law, as set forth more fully in the Declaration of Frank Sapienza." Mem. in Support of Third Motion at 17 n.10. Defendants also relied upon excerpts from one of the settled accounts that Sapienza had attached to his affidavit, declaring that "[t]hese excerpts demonstrate that the settlement of accounts by GAO involved a detailed procedure for verifying reported transactions by comparison to supporting

---

2.  According to the Sapienza Affidavit, these disbursing agents were bonded officials who "could deposit money from several sources, including individual Indian moneys." However, "[t]he authority of disbursing officers was limited to mak-

ing payments involving routine matters with prior approval. They were not authorized to make payments requiring judgment of validity or weighing evidence on the applications of law." Sapienza Affidavit ¶ 18.

documentation and correction of all errors where necessary." *Id.* at 18.

However, the assertions made in the Sapienza Affidavit are belied by the GAO Letter, which had been distributed by Assistant Secretary Berry to the Interior officials in charge of the present litigation. The GAO Letter clearly states that the records of the General Accounting Office "do not establish that GAO conducted a 'final' GAO comprehensive audit of IIM accounts, nor do they establish any regular practice of auditing IIM accounts." Defendants purport to explain the apparent contradiction by claiming that the "accounts" that Sapienza refers to in his affidavit were not individual Indian trust accounts, but accounts of government disbursing agents of the Indians. Therefore, defendants claim, they were completely accurate when they argued that the disbursing agent accounts—which included some transactions involving individual Indian trust moneys, but were not the same as individual Indian trust accounts—were regularly reviewed by GAO.

However, an examination of the Sapienza Affidavit demonstrates that it was not always made clear which "accounts" Sapienza was referring to. Although the discussion preceding paragraph 52 involves disbursing agent accounts, paragraph 52 itself tracks the language of paragraph 3 nearly word-for-word, and paragraph 3 clearly refers to IIM accounts, not disbursing agent accounts:

> In general, I determined that . . . (3) from 1921 to 1951, three government agencies—the Indian Office (now the Bureau of Indian Affairs or BIA), the Treasury Department, and the GAO—each dealt separately with *IIM accounts*. All three agencies had separate accounting controls in place for ensuring that *IIM accounts* were properly processed and the balances were accurately stated. The Indian Office and the Treasury Department used internal control procedures to ensure the accuracy of the transactions they processed. The GAO later audited those same transactions to prove their accuracy and validity, and any exceptions were promptly resolved.

Sapienza Aff. ¶ 3 (emphasis added). The statements in this paragraph are false be-

cause, as Assistant Dodaro had informed defendants in the GAO Letter, the GAO never "dealt separately with IIM accounts," nor did it have "separate accounting controls in place for ensuring that IIM accounts were properly processed and the balances were accurately stated."

In short, when the Sapienza Affidavit discusses "accounts," sometimes Sapienza is referring to Indian disbursing agent accounts, and sometimes he is referring to individual Indian money accounts. It is thus entirely false for defendants to contend that the Sapienza Affidavit does not contradict the GAO Letter because the affidavit "is careful to distinguish between a direct audit of IIM accounts and the indirect audit provided by the settlement of the disbursing agents' accounts." Defs.' Opp. to Pls.' Feb. 15, 2002 Mot. for Sanctions and a Contempt Finding Pursuant to Fed.R.Civ.P. 56(G) ("Defs.' Opp.") at 11.

It is also untrue that "the Third Motion made clear . . . that the [GAO] settlement process provided for an indirect, rather than direct, audit of IIM accounts; it provided, in other words, for the settlement of the Indian disbursing agents' accounts and, through these, of any IIM accounts for which these agents were responsible." *Id.* at 10. Indeed, far from providing clarity in the memorandum they filed in support of their Third Motion, defendants seem to have taken full advantage of the misleading similarity of the terms "Indian disbursing agent accounts" and "individual Indian trust accounts" by blurring the distinctions between these terms, and making no attempt to clarify to the reader which "accounts" are being discussed.

For example, during their discussion of the years 1921–51, which is supported by citations to the Sapienza Affidavit, defendants include the following statement: "There is no question that the accounts of individual Indians were routinely reviewed and corrected by both Interior and GAO between 1921 and 1951." Mem. in Support of Third Motion at 17. Although it may have been the case that the GAO audited the accounts of Indian disbursing agents, it is false to claim that the "accounts of individual Indians·were routine-

ly reviewed and corrected" by the GAO. In fact, defendants knew from the GAO Letter that the records of that agency contained no evidence that the GAO had established any regular practice of auditing IIM accounts during the years in question. Nevertheless, defendants insisted that "there [was] no question" that these accounts were subject to routine review by GAO, and repeated this statement verbatim in their statement of undisputed facts, which defendants submitted in support of the Third Motion. Defs.' Statement of Undisputed Facts in Support of Third Motion at 15.

Additionally, defendants twice claimed in their memorandum submitted in support of the Third Motion that during the years in question, the governing law required each Indian disbursing agent

> to submit his accounts, including those relating to IIM accounts, for settlement. Settlement consisted of a double audit— one by the Indian Office in Washington, D.C. and then one by a second agency (either Treasury or GAO). This system provided a regular and specific procedure for checking the accuracy of accounts maintained on behalf of individual Indians and was the only accounting or reconciliation required by law at the time.

Mem. in Support of Third Motion at 1–2, 22. Having received the GAO Letter, defendants knew that the records of the GAO "do not establish that GAO conducted a 'final' GAO comprehensive audit of IIM accounts, nor do they establish any regular practice of auditing IIM accounts." Given that there was no evidence that the GAO had established any regular practice of auditing IIM accounts, it was false for defendants to claim that the settlement of the accounts maintained by Indian disbursing agents "provided a regular and specific procedure for checking the accuracy of accounts maintained on behalf of individual Indians."

In sum, despite the fact that the Interior officials in charge of the present litigation possessed a letter from the General Accounting Office declaring that GAO had neither conducted a comprehensive audit of IIM accounts, nor established any regular practice of auditing IIM accounts, defendants filed an affidavit in support of their motion for partial summary judgment representing that the GAO "dealt separately with IIM accounts" and that it had "separate accounting controls in place for ensuring that IIM accounts were properly processed and the balances were accurately stated." Moreover, defendants made no attempt to inform the Court of the falsity of the information contained in the affidavit. Defendants' attempts to deceive the Court are only made more repugnant by the fact that, in their opposition brief to plaintiffs' motion for sanctions, defendants attempted to shift the blame for their misleading statements to plaintiffs, claiming that plaintiffs "play[ ] off the inherent ambiguities of such terms as 'accounting' and 'audit.' " Defs.' Opp. at 9. As dubious assertions go, this ranks down at the bottom with "It depends on what the meaning of the word 'is' is."

Therefore, the question that the Court must answer is whether it appears to the Court's satisfaction that the Sapienza Affidavit was presented to the Court in bad faith. If the Court answers this question in the affirmative, then the mandatory language in Rule 56(g) requires that the Court "shall forthwith order" defendants to compensate plaintiffs for the reasonable expenses that the filing of the Sapienza Affidavit caused plaintiffs to incur.

The First Circuit has observed that "little case law" exists on the application of Rule 56(g). *Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins. Co.*, 866 F.2d 11, 16 (1st Cir.1989). Therefore, "as a practical matter, a court has wide discretion in deciding what constitutes 'bad faith' or whether the introduction of affidavits was 'solely for the purpose of delay[.]' ". 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2742 (3d ed.1998). To aid its determination, the Court will examine cases in which courts faced the issue of whether to impose sanctions under Rule 56(g).

In *SMS Assocs. v. Clay*, 868 F.Supp. 337, 344 (D.D.C.1994), *aff'd*, 70 F.3d 638 (D.C.Cir. 1995), this Court awarded reasonable expenses, including attorneys' fees, against a defendant who had "engaged in dilatory tac-

tics expressly designed to prolong this already unduly protracted litigation," presenting affidavits made in bad faith and making untrue representations while under oath. More recently, in *Rogers v. AC Humko Corp.*, 56 F.Supp.2d 972, 979–81 (W.D.Tenn. 1999), a district court imposed Rule 56(g) sanctions against a defendant who had procured an affidavit from the plaintiff's supervisor falsely claiming that the supervisor had not known that plaintiff had applied for short-term disability before firing plaintiff. The court noted that "[a]t best, the affidavit contained a highly reckless representation of an important fact by Defendant's agent which representation Defendant never sought to expunge from the record despite subsequent notice as to its falsity. At worst, it was a deliberate and calculated misrepresentation abetted by counsel and designed to thwart justice and prevent a fair resolution of this case." *Id.* at 981.

In *Warshay v. Guinness PLC*, 750 F.Supp. 628, 639–41 (S.D.N.Y.1990), the court imposed Rule 56(g) sanctions in the amount of $10,000 against a plaintiff, concluding that if the plaintiff had not falsely alleged that he was not based in New York, it might have not been necessary to deny the defendant's motion for summary judgment. In *Barticheck v. Fidelity Union Bank/First Nat'l State*, 680 F.Supp. 144, 150 (D.N.J. 1988), after finding that one of the plaintiffs had filed an affidavit contradicting her prior deposition testimony, in an attempt to create a material issue of fact, the district court ordered the plaintiff to compensate defendants for expenses incurred in responding to her affidavit in their reply brief. And in *Acrotube, Inc. v. J.K. Fin. Group, Inc.*, 653 F.Supp. 470, 477–78 (N.D.Ga.1987), one of the defendants had falsely alleged in an affidavit that, in an earlier state court proceeding, he had never admitted to default on the loan that formed the basis of the current action. Finding that "[t]he testimony he offered was flatly at odds with facts indisput-

ably within his knowledge," the district court granted the plaintiff's motion for sanctions under Rule 56(g).

On the other hand, in *Fort Hill Builders*, the First Circuit reversed the imposition of Rule 56(g) sanctions against defendants who had waited to file a bias objection to one of the members of an arbitration panel until after the panel had ruled against the defendants. After examining the decisions in *Acrotube* and *Barticheck*, the First Circuit concluded that by contrast the defendants' conduct had neither been "particularly egregious" nor "entirely unwarranted." *Fort Hill Builders*, 866 F.2d at 16. Additionally, in *Jaisan, Inc. v. Sullivan*, 178 F.R.D. 412 (S.D.N.Y.1998), the district court decided not to impose Rule 56(g) sanctions because it concluded that the affidavit submitted by the plaintiff's president "[did] not contain any perjurious statements or blatant falsehoods." *Id.* at 417.

■ Given the pattern of deceit by defendants that was demonstrated in the factual findings made at the conclusion of the second contempt trial in this case, the Court is unwilling to turn a blind eye to yet another demonstration of defendants' misconduct and their willingness to mislead the Court and to misrepresent the truth whenever it suits them. As demonstrated above, the Interior Department officials in charge of the instant case possessed a letter from the Office of the Comptroller General informing them that GAO had neither conducted a final comprehensive audit of IIM accounts nor established any regular practice of auditing IIM accounts. Therefore, when defendants submitted the Sapienza Affidavit in support of their motion for partial summary judgment, they were filing an affidavit containing material representations of fact that defendants knew to be false. The Court is satisfied that this affidavit was presented to the Court in bad faith, and it will therefore impose sanctions against defendants pursuant to Rule 56(g) of the Federal Rules of Civil Procedure.[3]

---

3. Moreover, had defendants not withdrawn the Third Motion, the Court would invoke Rule 11 of the Federal Rules of Civil Procedure *sua sponte*, and order defendants to show cause why the filing of the Third Motion did not violate subsection (b) of that Rule. The Court is also cognizant that it could invoke its inherent powers to order defendants and their counsel to show cause why they should not be held in contempt, as it did during the Second Contempt Trial. However, the Court has determined that such an invocation is unwarranted at the present time.

■ It has been observed that "[a]lthough only a party may be ordered to pay expenses under Rule 56(g), the rule makes it clear that any offending party or attorney may be held in contempt." 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2742 (3d ed.1998). Nevertheless, because defendants withdrew the Third Motion before the Court had the opportunity to rule on its merits, the Court will exercise its discretion and decline to issue orders to show cause why defendants and their attorneys should not be held in contempt. The Court has made this decision for two reasons. First, because defendants withdrew the Third Motion, the sole direct harm from the filing of the affidavit fell onto plaintiffs, who were compelled to file an opposition brief in response to the claims made by the affidavit. Specifically, the harm to plaintiffs was that they were compelled to waste time and resources to oppose the claims asserted in the Sapienza Affidavit. As stated above, Part IV of the four-part brief filed by plaintiffs in opposition to the Third Motion on November 3, 2000, as well as 41 pages of the evidentiary appendix that plaintiffs submitted in conjunction with their opposition brief, dealt exclusively with the claims asserted in the affidavit. Therefore, the Court will order defendants to compensate plaintiffs for the reasonable expenses, including attorneys' fees, that plaintiffs incurred in opposing the claims made in the Sapienza Affidavit, in order to make plaintiffs whole. Second, other examples of similarly egregious misconduct, involving the provision of false information to this Court, have already been the subject of separate contempt proceedings. These proceedings were previously adjudicated as to Interior Secretary Gale Norton and Assistant Interior Secretary Neal McCaleb, and are the subject of pending separate proceedings as to thirty-nine named individuals, including all of the attorneys who filed the Third Motion. Therefore, it does not appear at this time that additional, separate contempt proceedings are necessary for the misconduct set forth herein. Nevertheless, counsel for defendants would be foolish to misconstrue this decision by the Court. The misconduct by defendants that is at issue here was egregious and undertaken in bad faith, and the Court condemns it. Accordingly, defendants, who bear the responsibility for this misconduct, have been held accountable herein. But additional individual accountability is already pending for so many other actions that the commencement of another round now for misconduct that took place in the year 2000 does not appear warranted at this time.

### B. Plaintiffs' Motion to Amend

■ Plaintiffs have sought leave from the Court to amend their motion for sanctions to add fifteen additional respondents. However, the language of Rule 56(g) plainly states that although any offending party or attorney may be held in contempt under the Rule, only a party may be ordered to pay expenses. As noted above, while the Court has ordered defendants to compensate plaintiffs for their reasonable expenses, the Court has elected not to go forward with contempt proceedings against defendants or their counsel. Therefore, because the fifteen persons named by plaintiffs do not include any parties to the instant suit, the Court would be unable to impose sanctions under Rule 56(g) against those additional persons. Accordingly, plaintiffs' motion to amend will be denied.

### III. CONCLUSION

As a direct result of defendants' submission of the Sapienza Affidavit, plaintiffs were unnecessarily required to expend time and resources to oppose the claims set forth in the affidavit. Accordingly, defendants must compensate plaintiffs for the waste of time and effort that resulted from defendants' filing of an affidavit containing false and misleading representations of fact.

For the reasons set forth herein, it is hereby

ORDERED that plaintiffs' motion for sanctions and a contempt finding pursuant to Rule 56(g) [1129–1] be, and hereby is, GRANTED in part and DENIED in part. It is further

ORDERED that defendants shall compensate plaintiffs for any reasonable expenses, including attorneys' fees, incurred by plaintiffs as a result of opposing the claims set

forth in the Sapienza Affidavit submitted in conjunction with defendants' Third Motion. It is further

ORDERED that plaintiffs shall submit to the Court within thirty (30) days an appropriate filing detailing the amount of reasonable expenses and attorneys' fees incurred as a result of preparing and filing their opposition brief to the Third Motion. Any response thereto shall be submitted within thirty (30) days thereafter. It is further

ORDERED that plaintiffs' motion for leave to amend [1326–1] be, and hereby is, DENIED. It is further

ORDERED that plaintiffs' motion to amend plaintiffs' February 15, 2002 summary judgment contempt motion and a contempt finding pursuant to F.R.C.P. 56(g) [1326–2] be, and hereby is, DENIED.

SO ORDERED.